UNITED STATES of America, Plaintiff,

v.

George Richard BURCH, William Albert Jaegers, Jr., Thomas Morris, and Paul Brian Owens, Defendants.

Crim. A. No. 77–36.

United States District Court, D. Delaware.

May 26, 1977.

Alan J. Hoffman, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

James B. Tyler, III, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendant Burch.

Henry A. Wise, Jr., of Wise & Windfield, Wilmington, Del., for defendant Jaegers.

Charles P. Brandt, Wilmington, Del., for defendant Morris.

Carl Schnee, of Schnee & Castle, Wilmington, Del. for defendant Owens.

STAPLETON, District Judge:

The defendants in this action have been charged with possession of automobile tires which had been stolen from an interstate shipment and with conspiracy, both in violation of 18 U.S.C. § 659. Presently before the Court is a motion by William Jaegers, one of the defendants, to suppress the allegedly stolen automobile tires on the ground that they were seized in the course of an illegal search. Jaegers also moves to dismiss the indictment on the ground that there was an unreasonable delay between the alleged crime and the date of indictment. For the reasons that follow, the motion to suppress is granted; the motion to dismiss the indictment is denied.

### I.

The challenge to the search and seizure in this case is based on the breadth of the search authorized by the warrant issued by this Court. There is no allegation that the warrant was issued without probable cause or that the officers who executed the warrant exceeded the scope of their authority under the warrant.

On May 7, 1976, as a predicate for obtaining a search warrant, a Special Agent of the Federal Bureau of Investigation presented an affidavit to the Court detailing the facts the Agent knew or, on the basis of reports of an informant of proven reliability, believed to be true. In the affidavit, the Agent outlined in general terms several incidents related to thefts of auto tires and other goods from the Penn Central Railroad in Wilmington in which the defendants were said to have been involved. He then described in detail an incident he had observed the previous night and early the morning of May 7th. The Agent stated that, while conducting a surveillance in the Penn Central Edgemoor Yard, he observed four males loading tires onto two vans, one of which fit the description of and had the same license plate as a van belonging to Jaegers. The Agent reported that the same van was seen a short time later at Jaegers' home. The Agent sought authorization to search the van and an adjacent garage belonging to Jaegers. The Court approved the search warrant as requested.

The warrant authorized search of the van and Jaegers' garage for "automobile tires and a green 1975 Dodge van with Delaware license C–99175 and other unknown articles which are believed and reported to be stolen from Penn Central Railroad. . . ." The same day, pursuant to the warrant, federal agents went to Jaegers' home and conducted a search of the van and the garage. They seized forty-two tires, a tool box, a power lawnmower, ninety-six rolls of toilet tissue, a portable radio, an electric generator and several other items. Except for the tires, much of the seized property has since been returned. The tires are the only fruits of the search that the Government wishes to introduce at trial.

Jaegers does not quarrel with the specificity of the warrant's description of the tires but he contends that the inclusion of permission to search for "other unknown articles which are believed and reported to be stolen from the Penn Central Railroad" transformed the warrant into a general warrant. The Fourth Amendment outlaws general warrants and general searches by requiring that a warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." The pur-

pose of this requirement is to prevent "general exploratory rummaging in a person's belongings", *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971), and "the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant". *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). The question presented here is whether the warrant before the Court, read as a whole, sufficiently circumscribed the discretion of the executing officers, or, to the contrary, allowed them to conduct a general, unlimited search.

■ Last term, the Supreme Court considered a case similar in several respects to the one before this Court and made it clear that a warrant is not *per se* invalid because it includes language permitting seizure of "other fruits" or "other unknown articles". *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). The warrants challenged in *Andresen* authorized search for a lengthy and detailed list of documents, taken " 'together with other fruits, instrumentalities and evidence of crime at this [time] unknown' ". 427 U.S., at 481, n. 10, 96 S.Ct., at 2748. The defendant argued that the phrase ". . . other fruits" rendered the warrant fatally general. The Supreme Court disagreed. The Court said that the phrase under attack had to be read in context and that the context revealed plainly that the warrant authorized search only for evidence relating to a single crime, the crime of false pretenses with respect to the sale of a single piece of property. Emphasizing this limitation in the warrant to evidence related to a single, specified crime, the Court held that the warrant did not permit an unrestricted search and, thus, that the evidence seized pursuant to it was admissible in a prosecution for that crime.

Implicit in the Supreme Court's holding was the recognition that, by limiting the search to evidence of a single crime, the warrant gave executing officers a means to distinguish among Andresen's files and documents and to identify those they were authorized to seize. The warrant under consideration here differs in this critical respect: it was not limited to a search for evidence or fruits of any particular crime or crimes. On its face, the warrant permitted a search for anything which could have been stolen at any time from Penn Central in Wilmington. Because of the wide array of goods that are shipped by rail and which, thus, might fall into this category, the FBI agents might reasonably have concluded that the warrant authorized them to seize virtually anything.[1] The warrant imposed no effective limit on the scope of the search.

■ In cases like this where the goods to be seized are not by nature contraband, courts have stressed the special need for particularity of description in order to minimize the risk that police will conduct an unlimited search. In *United States v. Quantity of Extracts, Bottles, Etc.*, 54 F.2d 643, 644 (S.D.Fla.1931), the court summarized what I perceive to be the teachings of the case law in this area as follows:

> When dealing with property which is inherently innocuous, the affidavit and warrant should contain at least a designation by generic terms of the class, or classes, of property to be searched for and seized. The executing officer's sole function is to apply the description to its subject matter. Performance of that function may frequently involve the exercise of a limited discretion in identifying the property described. A description of such generality, however, as to lodge in the executing officer virtually unlimited discretion as to what property shall be seized, is repugnant both to the Constitution and the Espionage Act, each of which requires that the property to be seized shall be particularly described.

1. It appears from the number and variety of articles seized that the agents in fact believed that they were authorized to seize just about anything. *Andresen, supra*, at 482, n. 11, 96 S.Ct. 2737, instructs however, that the validity of a warrant must be tested by a court's interpretation of the warrant as written, not by the scope of the search conducted by the police executing it.

Based on all of the authorities reviewed, I can only conclude that a warrant authorizing a search for "stolen property" is a general warrant repugnant to the Fourth Amendment.

■ The Government makes an alternative argument. It strenuously contends that, even if the warrant was overbroad, the automobile tires were specifically identified in the warrant and that, as to the tires, the search was legal. In effect, the Government asks the Court to act as if there were two searches, a legal search for tires and an illegal search for "other unknown articles". Such an approach cannot be squared with the interests which the Fourth Amendment was designed to protect or with the facts in this case.

■ The Fourth Amendment, absent exigent circumstances, prohibits *any* intrusion upon a person's privacy without a prior judicial determination that the intrusion is justified. That prohibition was not violated in this case. The Court properly decided that there was probable cause to believe that stolen automobile tires would be found on Jaegers' property and entry upon those premises was justified. But the Fourth Amendment has a second and distinct objective—to ensure that those searches which are authorized are as limited in scope as the justification for them. "Here, the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion *per se*, but of a general, exploratory rummaging in a person's belongings". *Coolidge v. New Hampshire, supra,* at 467, 91 S.Ct. at 2038. It is in this second respect that the warrant failed. The inclusion of the specific reference to tires afforded no protection to Mr. Jaegers' right to be free from a general search. The search which the warrant authorized, and the search which in fact occurred, was no more narrow by reason of the inclusion of that reference than it would have been in its absence. When the agents entered Jaegers' property on the morning of May 7th they were authorized to search for and seize anything they thought might have been stolen from Penn Central. In sum, there was only one search, that search, unlimited in scope as it was, violated the Fourth Amendment, and the tires were the fruit of that search.[2] Accordingly, they must be suppressed.[3]

## II.

■ In support of the motion to dismiss the indictment, Jaegers complains that the Government waited from May 7, 1976, when the crime in question allegedly occurred, until March 23, 1977, to seek a bill of indictment against him. Jaegers asserts that this ten month delay has prejudiced him in that he no longer works for Penn Central and, thus, no longer has access to the records which would show whether or not he was on duty the night the tires were stolen. Further, he says that when his van and certain of his other property[4] were returned to him, he assumed that that was the end of the matter and he made no effort to seek out witnesses who could testify as to his whereabouts at relevant times. Finally, he says that he is "not sure" he can reconstruct his activities, obtain relevant records, and locate witnesses who will have any recollection of the events of the evening. Suffice it to say that these vague allegations about possible prejudice are not sufficient to support a claim for the relief he seeks. If, at some later date, a record of palpable, substantial prejudice is made, the defendant may renew his motion. *United States v. Marion,* 404 U.S. 307, 324–26, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

2. I have discovered two cases in which courts have reached a contrary conclusion by holding that a specific provision of a warrant could be "severed" from an offending general provision and thus, that the seizure of the specifically named items was legal. I am not persuaded by their reasoning. *United States v. Ketterman,* 276 A.2d 243 (D.C.1971); *Aday v. Superior Court of Alameda County,* 55 Cal.3d 789, 13 Cal.Rptr. 415, 362 P.2d 47 (1961).

3. *See Stone v. Powell,* 428 U.S. 465, 492–93, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

4. The tires were not returned.