**UNITED STATES of America**

v.

**Drax QUATERMAIN.**

**Crim. No. 78–308.**

United States District Court,
E. D. Pennsylvania.

Jan. 11, 1979.

On Motion to Dismiss March 30, 1979.

Theodore A. McKee, Asst. U. S. Atty., Philadelphia, Pa., for United States.

Alan A. Turner, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NORMA L. SHAPIRO, District Judge.

Defendant, Drax Quatermain, is charged in Indictment No. 78–308 with possession of a firearm as a convicted felon in violation of 18 U.S.C.App. § 1202(a)(1) (Count I) and certain offenses relating to the manufacture and distribution of a firearm silencer in violation of 26 U.S.C. § 5861(d), (e), (f) and (i) (Counts II–V). Defendant's motion for a bill of particulars having been withdrawn, there remain for the Court's pre-trial consideration:

1) Defendant's application for relief from prejudicial joinder, or in the alternative, to limit the government's trial proof;

2) Defendant's motion to suppress physical evidence and return seized property;

3) Defendant's motion to dismiss; and

4) Defendant's application to determine admissibility of mechanical recordings.

## APPLICATION FOR RELIEF FROM PREJUDICIAL JOINDER

Defendant's application for relief from prejudicial joinder is an appeal to the discretion of the Court pursuant to Federal Rule of Criminal Procedure 14.[1] Defendant concedes that Counts I–V may be charged in the same indictment pursuant to Federal Rule of Criminal Procedure 8, but argues that the prejudice arising from the joinder requires relief in the interests of justice. The principal consideration in ruling on a severance motion is whether a consolidated trial would be so prejudicial to a defendant that it outweighs the convenience, economy, and efficient administration of justice which the government and all defendants deserve. *United States v. Kulp*, 365 F.Supp. 747, 765 (E.D.Pa.1973), *aff'd mem.*, 497 F.2d 921 (3d Cir. 1974).

Count I charges defendant with possession of a firearm as a convicted felon; the remaining counts charge violations of the tax laws relating to the manufacture and distribution of a silencer for a firearm. Count I requires proof of prior conviction of a felony as an essential element of the offense. It is not disputed that defendant has been so convicted within the meaning of the statute. However, Counts II–V, if tried alone, require no such proof; were it not for Count I, the admissibility of defendant's prior conviction would be severely limited at trial. Under Federal Rule of Evidence 609(a), evidence that defendant has been convicted of a crime is admissible at the instance of the government only if the defendant testifies, and, even then, only if the

1. "If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. . . ." Federal Rule of Criminal Procedure 14.

crime involves dishonesty or false statement or the conviction is for a felony and the Court should determine that the probative value of the evidence outweighs its prejudicial effect to the defendant.

In this case the defendant believes it will be difficult for a jury to separate from their consideration of Counts II–V the defendant's criminal conviction introduced as an element of Count I. If there is no severance and defendant does not testify, the jury will be required to consider evidence of a felony conviction on one count and to disregard it on all others. If defendant does testify and if cross-examination of defendant as to his conviction is permitted, the jury will be required to consider evidence of the felony on one count for one purpose and on other counts for a different purpose altogether. The difference in purpose for which the evidence under consideration would be admitted could not be distinguished or intelligently applied by the average juror and would lead to the danger of letting the trier of fact convict the defendant because of his prior record. *See U. S. v. Cook,* 538 F.2d 1000, 1004 n.12 (3d Cir. 1976), where Judge Adams for the Court notes the Kalven and Zeisel study, *The American Jury,* reporting:

> ". . . a statistical study showing that when a defendant's criminal record is known and the prosecution's case has contradictions the defendant's chances of acquittal are 38%, compared to 65% otherwise."

*Cf. U. S. v. Marshall,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959) (publicity or inadmissible evidence regarding prior record is especially prejudicial).[2]

Moreover, Count I has a penalty of only two years' imprisonment. If tried with the other counts, defendant's prior conviction of a felony, a necessary element of the offense charged in Count I, may convince the jury to convict defendant on Counts II–V which are punishable by ten years' imprisonment each. Therefore, a fair determination of defendant's guilt or innocence on these offenses may not be achieved if the offenses are tried together.

This prejudice to the defendant resulting from the joinder of charges will clearly be alleviated by separate trials; the burden to the government is not great. A separate trial on Count I would be a short and simple one and not unduly wasteful of judicial and court economy. Neither will severance result in two separate trials consisting of essentially the same evidence. The government will be allowed to prove the prior felony conviction in a trial of Count I even though the conviction is not an element of the offenses charged in Counts II–V. Therefore, this is not a case where the evidence necessary to prove the allegations on all counts would be essentially the same; *compare U. S. v. Vignola,* 464 F.Supp. 1091 (E.D.Pa.1979), where Chief Judge Lord, denying a post trial motion attacking his refusal to sever, found no prejudice on account of the cross-admissibility of evidence on all counts.

■ American Bar Association Standards Relating to the Administration of Criminal Justice, Joinder and Severance, 13–3.1(b)(i) (2d Ed.Tent. Draft, Summer, 1978), state that the court should grant a severance of related offenses before trial, "wherever severance is deemed to promote a fair determination of a defendant's guilt or innocence of each offense." The Court, therefore, finds that more prejudice will result to defendant if Counts II–V are tried with Count I than to the government if Count I is tried separately. Accordingly, defendant's application for relief from prejudicial joinder pursuant to Rule 14 is GRANTED.

---

**2.** "(c) When evaluating whether severance is 'appropriate to promote' or 'necessary to achieve' a fair determination of the defendant's guilt or innocence for each offense, the court should consider among other factors whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." ABA Standards Relating to the Administration of Criminal Justice, Joinder and Severance, 13–3.1(c) (2d Ed.Tent.Draft, Summer 1978).

## MOTION TO SUPPRESS PHYSICAL EVIDENCE

■ The law requires that items which are to be seized pursuant to a lawfully obtained search warrant must be set forth within such search warrant with particularity. *Marron v. United States,* 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); accord, *Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). The search warrant in the instant case contained the following description of property to be seized:

"A red vise, hacksaw, copper pipe, steel wool, swagging tool and other tools and materials used in the production of a silencer in violation of 26 U.S.C. § 5861."

Defense counsel concedes probable cause for the seizure of the specified items; however, defense counsel attacks the remaining language as being too general and allowing for a general search of defendant's property. Therefore, defendant argues that the search warrant did not specify items to be seized with sufficient particularity so that its issuance was illegal as was its execution.

Federal Rule of Criminal Procedure 41(b)(3) includes within the definition of material which may be seized with a warrant the following:

"Property designed or intended for use or which is or has been used as the means of committing a criminal offense."

The language in the search warrant to which defense counsel now objects does nothing more than include in the search warrant description the very provisions of Rule 41(b)(3).

In *Andresen v. Maryland,* 427 U.S. 463, 479, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976), the Supreme Court upheld a search where items were seized pursuant to a search warrant authorizing seizure of particular documents "together with other fruits, instrumentalities and evidence of crime at this [time] unknown." The Court found that, read in context, the warrant limited the authorized seizure to evidence of one particular offense and the above-quoted phrase did not invalidate the warrant.

Defense counsel cites *United States v. Burch,* 432 F.Supp. 961 (D.Del.1977). However, in *Burch,* the warrant in question called not only for seizure of certain specified stolen items, but also for "other unknown articles which are believed and reported to be stolen from Penn Central Railroad." *Id.* at 962. Judge Stapleton noted that "on its face, the warrant permitted a search for anything which could have been stolen at any time from Penn Central in Wilmington." *Id.* at 963. That warrant was held unconstitutionally vague as issued. The warrant in the instant case does not suffer from such vagueness and is specific in allowing seizure of certain named items and other items which were used in regard to the one specified offense, that is, other tools and materials used in the manufacture of a silencer.

■ The government concedes that not all of the items which were set forth in the inventory as having been seized were items which might be used in the manufacture of a silencer. The government will be ordered to return those items set forth in the property inventory report (Exhibit DS 2) which were items not covered by the description of property authorized to be seized by the Search Warrant and Affidavit (Exhibit DS 1) and concededly not contraband. The motion to suppress physical evidence and return seized property is GRANTED as to Items 12, 16 and 18–27 inclusive (a number of technical manuals, unrelated to silencers), but otherwise DENIED.

## MOTION TO DISMISS

Defendant also moves to dismiss the indictment against him because he claims it is tainted by evidence derived from his immunized testimony. It is agreed that defendant Quatermain had formerly volunteered to testify under a grant of immunity against the informant in this case, Zelman Fairorth, and that Fairorth was convicted and sentenced to imprisonment for offenses related to the manufacture of methamphetamine as a result of defendant's cooperation. While on bond pending appeal, Fairorth turned informant against Quater-

main, motivated in part, as conceded by the government, by Quatermain's cooperation against him. Government Alcohol, Tobacco and Firearms agents testified that Fairorth cooperated with the government by buying for defendant, at government expense, the materials requested by defendant for the production of a silencer. The seizure of these materials at the residence of defendant precipitated the charges defendant now moves to dismiss.

The questions raised by defendant's motion and the evidence presented are:

1) Whether the defendant is protected from being prosecuted on this indictment by a previous immunity agreement with the government;

2) Whether the defendant is protected from having evidence derived from his testimony given pursuant to that immunity agreement used against him.

The government and the defendant agree on certain factual issues. It is agreed that there was an immunity agreement and that the testimony of the informant, Fairorth, proposed to be used by the government in this case, is derived from the testimony of the defendant given pursuant to the immunity agreement.[3]

The disagreement between the government and the defendant is the scope of that immunity agreement and its relation to this case. The defendant claims the agreement encompassed "use immunity" and the government characterizes the immunity as both "use" and "transactional," but argues that the agreement limited the immunity to the manufacture of methamphetamine about which the defendant testified against the informant.

The government presented the testimony of an Assistant United States Attorney who signed a letter purporting to confirm an immunity agreement between the defendant, then known by another name, and the government. The Assistant United States Attorney testified that the defendant came in as a voluntary informant and negotiated this agreement. The letter, admitted into evidence as GS 2, is dated June 7, 1977. The letter, it must be noted, is not a memorandum of agreement signed by both the defendant and the government; it is the government lawyer's version of whatever agreement was reached. The author of the letter testified that he and another Assistant United States Attorney and one or two government agents were present during the negotiations, but that the defendant, who is not a lawyer, was not represented by counsel. According to the letter, defendant promised to cooperate and testify for the government in exchange for the government's promise of

"immunity from prosecution for your participation and involvement with Zelman A. Fairorth and others relating to the manufacture of methamphetamine." GS 2.

The government also promised defendant and his family the services of the Department of Justice Witness Protection Plan or similar services from the Drug Enforcement Administration.

The defendant and the government dispute the meaning of the immunity agreement. The government relies on the language of the letter itself for its meaning, both in the testimony of the author of the letter and in the objections and argument of the prosecuting government attorney. But because the letter is not unambiguous on its face, the Court must look to the evidence of the setting in which the agreement was reached and to the context of immunity law.

■ Immunity granted to procure testimony which would otherwise be incriminating may be characterized as transactional immunity or use immunity. Transactional

---

**3.** The prosecuting government attorney stated on the record:

"The Government is willing to concede that Mr. Fairorth's present cooperation in the Government's prosecution against this defendant is at least in part—I am not certain as to what part, or that that matters—but at least in part it was derived from the prior cooperation of the defendant with the Government in the prosecution of Zelman Fairorth."

immunity generally means that an individual who is compelled to testify will not be prosecuted for the crimes about which he or she testifies. Use immunity, that is use and derivative use (or fruits) immunity, refers to immunity which will not allow a person's compelled testimony or any evidence derived from that testimony (e. g., leads or witnesses) to be used against him or her in any criminal prosecution. If the government has independent evidence to convict the person of the crime about which he or she testified under a grant of use immunity, he or she may still be prosecuted.

■ The Supreme Court has held that use and derivative use immunity is the minimum constitutional requirement before a witness relying on the Fifth Amendment right not to be compelled to be a witness against himself or herself can be ordered to testify. *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) (federal immunity statute, 18 U.S.C. §§ 6002–6003, providing only for use and derivative use immunity held constitutional; Fifth Amendment does not require transactional immunity also). The Court relied on *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), where it had found that state transactional immunity was not enough to compel testimony if it did not provide for use and derivative use immunity in federal court. In the constitutional sense, then, use immunity is included within transactional immunity, but it can also be constitutionally sufficient alone; the Fifth Amendment requires that a witness compelled to testify be in no worse position in regard to criminal prosecution after he or she testifies than before.

■ In the circumstances of this case (a) where the letter of the government attorney promised "immunity from prosecution" without specifically excepting use or derivative use immunity; (b) where the government referred to the immunity as use immunity in its answer and memorandum of law; (c) where the government refused to withdraw that characterization on the record when questioned; (d) where the government relies solely on the letter of immunity itself; and (e) where the negotiating defendant was a layperson unrepresented by counsel, this Court will not construe the immunity granted as less than the constitutional minimum. Cf. *United States v. Yurasovich,* 580 F.2d 1212, 1221 (3d Cir. 1978) (doubts as to efficacy of invocation of Fifth Amendment to be resolved in favor of witness).

■ It may be argued that the defendant's testimony was not compelled by court order and constitutional considerations and statutory analogies need not apply in this case. This Court, however, is of the view that the defendant gave up a constitutional right not to testify and assisted the government. He should not be presumed to have done so for less than his constitutional entitlement, absent any evidence that he was informed of the scope of that right by the government's attorney or that he knowingly and intelligently waived it. Because the defendant, a layperson, was not represented by counsel and the government was, this Court will construe any ambiguities in the letter against the government.

■ The government appears to argue that unless it can limit use immunity to the methamphetamine transactions, defendant can commit any misconduct he wants. This is a misconception of use immunity. Use immunity does not immunize conduct; it only limits the use of testimony or evidence derived from that testimony which the government has obtained pursuant to agreement or compulsion. Attempting to limit the forbidden use of testimony to a particular transaction is a contradiction in terms. It is not use immunity at all.

*United States v. Kurzer,* 534 F.2d 511 (2d Cir. 1976), *on remand,* 422 F.Supp. 487 (S.D. N.Y.1976), is relied on by defendant in urging that this Court should dismiss the indictment. In *Kurzer,* the defendant testified before a grand jury regarding tax offenses under an informal grant of statutory § 6003 use immunity. As a result, Kurzer's client was indicted and the client then agreed to testify against Kurzer; Kurzer

was indicted for aiding and abetting the filing of false tax returns. The district court dismissed this indictment against Kurzer because the client's testimony to the grand jury which indicted Kurzer was motivated in part by Kurzer's testimony against the client under an immunity grant; the government had not met its burden of proving that the indictment was not tainted by this derivative use of Kurzer's immunized testimony. *Kurzer* correctly notes that *Kastigar, supra,* 406 U.S. at 460, 92 S.Ct. 1653, at 1665, "imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a source wholly independent of the compelled testimony." That is the standard which should be applied here.

The Court so stated in an oral opinion from the bench on this motion on November 27, 1978. On December 12, 1978, pursuant to the government's request for reconsideration and rehearing, the Court allowed the government to present two additional witnesses, Drug Enforcement Administration Special Agents, who testified about conversations they had had with defendant regarding the immunity agreement. These agents testified they were not parties to the drafting of the letter (GS 2) and that the United States Attorney made the agreement with the defendant. Their testimony that they told the defendant that he had to call them for authorization before engaging in any other illegal conduct did not make the scope of the immunity any less ambiguous to the Court.

Government agents testified further that an informant, in order to "get even" for his own conviction, reported that another convicted felon in illegal possession of a firearm was willing to manufacture a silencer for it and supply it to the informant. Government agents provided funds for the informant to purchase and deliver to defendant supplies for the manufacture of a silencer in order to press criminal charges against defendant for the illegal possession of a gun as a convicted felon and for the manufacture and distribution of a firearm silencer. The Court was not impressed with the government's apparent view that its investigators and prosecutors have broad power to authorize violations of the law by their informants in the name of searching out crime.

Involvement of government agents in illegal activities and providing essential supplies through informants has recently moved the Third Circuit to reverse a conviction in *U. S. v. Twigg,* 588 F.2d 373 (1978). There an informant was used to encourage defendant and to provide essential supplies and technical expertise in the manufacture of drugs.

"This egregious conduct on the part of government agents generated new crimes by the defendant merely for the sake of pressing criminal charges against him when, as far as the record reveals, he was lawfully and peacefully minding his own affairs. Fundamental fairness does not permit us to countenance such actions by law enforcement officials and prosecution for a crime so fomented by them will be barred." *Id.* at 381.

While not a determining factor in the Court's decision here, one must also wonder at the conduct on the part of government agents generating new crimes for the sake of pressing criminal charges.

 The government in this case conceded that Fairorth's testimony against defendant is derived from defendant's prior cooperation against Fairorth. However, this Court has nothing before it on the record to show what evidence was used before the grand jury, nor has it been shown on the record that informant Fairorth's testimony or evidence derived from it is the only evidence in this case. Cf. *United States v. Apfelbaum,* 584 F.2d 1264, 1272 (3d Cir. 1978). We believe the proper remedy in this case is to treat defendant's motion to dismiss as asking, in the alternative, to exclude the tainted testimony of Zelman Fairorth and any testimony derived from Fairorth. F.R.Cr.P. 12(b)(3). The government may proceed to trial with any evidence it can show is not derived from the immunized testimony of the defendant. Based on the foregoing discussion, the mo-

tion to dismiss is DENIED, but as a motion to exclude the testimony of Zelman Fairorth and any evidence derived therefrom it is GRANTED.

## APPLICATION TO DETERMINE THE ADMISSIBILITY OF MECHANICAL RECORDINGS

The government and the defendant have agreed to defer an evidentiary hearing on the admissibility of mechanical recordings until the Court has ruled on the motion to dismiss discussed above. If the government now determines to proceed to trial and the use of any mechanical recordings at trial is consistent with the Court's ruling to exclude the testimony and any evidence derived from informant Fairorth, the Court will hold a further evidentiary hearing in order to rule upon admissibility.

### CONCLUSION

In light of the foregoing Memorandum, the Court enters the following Order.

1) The Motion for a Bill of Particulars is WITHDRAWN;
2) The Application for Relief from Prejudicial Joinder is GRANTED;
3) The Motion to Suppress Physical Evidence is DENIED and to Return Seized Property is GRANTED IN PART;
4) The Motion to Dismiss is DENIED, but as a Motion to Exclude Tainted Evidence is GRANTED; and
5) The Application to Determine Admissibility of Mechanical Recordings is DEFERRED pending an evidentiary hearing if the government determines to proceed to trial. The Government shall notify the Court promptly of its decision.

## ON MOTION TO RECONSIDER MOTION TO DISMISS

By prior Order of January 11, 1979, defendant's motion to dismiss the indictment for breach of an immunity agreement with the government was denied, but testimony of a government informer, Zelman Fairorth, and any evidence derived therefrom were excluded as tainted fruits of immunized testimony. The government was allowed to proceed to trial with any evidence it could show was not derived from the immunized testimony of defendant. Defendant subsequently filed an application for reconsideration of the denial of his motion to dismiss the indictment.

At the original argument on the motion, the Assistant United States Attorney stated that if the informant's evidence were to be excluded, the government would then review the matter to see if it could proceed without using evidence obtained either directly or indirectly from the informant and it not, the government would move to dismiss the indictment. Notwithstanding such representation, at a hearing on the motion to reconsider, the government declined to request dismissal.

The Assistant United States Attorney admitted in open court that "the only evidence presented to the Grand Jury to secure this indictment was evidence obtained either from or through the cooperation of Zelman Fairorth." The government also admitted in its answer to the motion to reconsider that the only evidence presented to the Grand Jury to secure the indictment was evidence obtained from or through the cooperation of the informant, Zelman Fairorth; Government Answer, ¶ 4. Since the government nonetheless failed to move to dismiss the indictment, the Court had no alternative but to do so.

A trial court faced with a pretrial motion to dismiss the indictment because of immunity previously granted has alternatives for determining whether or not the prosecution's evidence is tainted; here a pretrial evidentiary "taint" hearing was held; cf. United States v. De Diego, 167 U.S.App. D.C. 252, 511 F.2d 818 (1975). The government not only failed to meet its burden, it made no effort to establish that any evidence to be used was derived from legitimate independent sources. Whether or not it is enough that there is *some* competent evidence to sustain the charge issued by the grand jury even though other evidence be-

fore it is incompetent (see *Coppedge v. United States,* 114 U.S.App.D.C. 79, 83, 311 F.2d 128, 132 (1962) (then-Judge Burger)), here the government now admits that there was *no* evidence independent of the immunized testimony since the *only* evidence presented to the grand jury was evidence obtained from or through the cooperation of informant, Zelman Fairorth.

Dicta in *United States v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), suggested the validity of an indictment is not subject to challenge if based on information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination,* but Fifth Amendment immunity cases since *Calandra* have dismissed indictments tainted, even in part, by the use of immunized testimony in continued reliance on *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). *United States v. Anzalone,* 555 F.2d 317, 319 (2d Cir.1977), *op. on rehearing,* 560 F.2d 492 (1977), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978); *United States v. Hinton,* 543 F.2d 1002 (2d Cir.), *cert. denied,* 429 U.S. 980, 1051, 1066, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976); *United States v. Kurzer,* 534 F.2d 511 (2d Cir. 1976), *on remand,* 422 F.Supp. 487 (S.D.N.Y.1976). The United States Court of Appeals for the Third Circuit recently considered a claim that an indictment be dismissed in *United States v. Apfelbaum,* 584 F.2d 1264 (1978), *cert. granted on other grounds,* —— U.S. ——, 99 S.Ct. 1496, 59 L.Ed.2d 770 (1979). Defendant's conviction was reversed for impermissible use of immunized testimony, but the Court declined to dismiss the indictment. The Court noted that record was "deficient of any proofs that the grand jury which indicted Apfelbaum impermissibly relied on his immunized testimony," and therefore it "declin[ed] Apfelbaum's invitation to address his purported constitutional violation." *Id.* at 1272, citing *Anzalone* and

*Hinton, supra.* In this case, by contrast, the government concedes on the record that the only evidence presented to the grand jury was what this Court found to be tainted fruits of an immunity agreement. The government also concedes it has no other evidence to proceed with at trial. When an indictment is the product solely of immunized testimony it must be dismissed so far as substantive offenses are concerned. *United States v. Anzalone, supra;* *United States v. Kurzer, supra.*

At a hearing on the instant motion to reconsider, the government chose not to go to trial but nevertheless refused to dismiss. Since the government was not able to proceed in this matter without using evidence obtained directly or indirectly from the informant, Zelman Fairorth, the motion to reconsider was granted and the indictment dismissed by Order of February 9, 1979.

---

* The Supreme Court held in *Calandra* that a grand jury witness could not refuse to answer questions on the grounds that they were based on evidence from an unlawful search and seizure, because the Fourth Amendment exclu-

sionary rule was deemed a judicially created remedy to deter unlawful police misconduct rather than a personal constitutional right of the party aggrieved.