The UNITED STATES, Plaintiff,

v.

John Niles HUSLAGE, Thomas Albert Stewart, Defendants.

Crim. No. 79–127.

United States District Court,
W. D. Pennsylvania.

Dec. 5, 1979.

James Y. Garrett, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

George E. Schumacher, Federal Public Defender, Pittsburgh, Pa., for Huslage.

Vincent A. Colianni, Pittsburgh, Pa., for Stewart.

## MEMORANDUM OPINION

COHILL, District Judge.

A federal grand jury returned a five-count indictment against John Niles Huslage and Thomas Albert Stewart on July 25, 1979. A synopsis of the five counts follows:

(1) Count One charges both defendants with kidnapping a fifteen-year old minor, (who will be referred to as "C.T."), in violation of 18 U.S.C. § 1201 (1976), and trans-

porting her from Albuquerque, New Mexico to Philipsburg, Pennsylvania.

(2) Count Two charges that both defendants knowingly transported a female—C.T. —in interstate commerce for an immoral purpose in violation of the Mann Act, 18 U.S.C. § 2421 (1976).

(3) Count Three charges Huslage alone with knowingly shipping and transporting a firearm in interstate commerce, having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g) (1976).

(4) Count Four charges Huslage alone with violating 18 U.S.C. § 922(i) (1976) by knowingly shipping and transporting a stolen firearm in interstate commerce, knowing or having reasonable cause to believe that the firearm was stolen.

(5) Count Five charges that both defendants unlawfully carried a firearm during their commission of the offense of kidnapping in violation of 18 U.S.C. § 924(c) (1976) and 18 U.S.C. § 2 (1976).

Mr. Huslage is thus charged under all five counts of the indictment, while Mr. Stewart is charged as a codefendant in Counts One, Two and Five.

On October 22, 1979, this Court heard testimony and arguments on four pretrial motions presented by the defense. The defendants joined in making all four motions. Although this Court orally ruled on these motions in order to enable counsel to proceed with their preparations for trial, we now provide a fuller explanation of those rulings.

## I.

### Joint Motion to Dismiss Count Two

Count Two of the indictment charges both John Niles Huslage and Thomas Albert Stewart with a violation of section 2421 of Title 18 of the United States Code, which is commonly known as the Mann Act. The defendants argue that the United States Attorneys' Manual directs the district offices only to prosecute cases under section 2421 when those cases involve commercial prostitution activities. Noting that the present case does not have any commer-

cial element, the defendants move this Court to dismiss Count Two, or in the alternative, to order the government to request a determination by the Justice Department of the propriety of the instant prosecution.

Section 2421 does not require, on its face, that the government prove an element of commercialism in order to obtain a conviction. Rather, the statute authorizes the prosecution of anyone who knowingly transports across state lines a female for any immoral purpose. If the government proves the facts alleged in this case, a jury lawfully could convict the defendants under the Mann Act. The procedures set forth in the United States Attorneys' Manual are not binding on district offices, the Manual creates no rights in any party, and the United States District Courts have no jurisdiction to enforce the Manual's directives. *See United States v. Shulman*, 466 F.Supp. 293, 297–301 (S.D.N.Y.1979). Even if this Court did have the authority to enforce the Manual, however, we still would not dismiss Count Two. We interpret the relevant section of the Manual as seeking to avoid the prosecution of cases in which there was no commercial element and the female had consented to the interstate travel. We do not believe that the Manual seeks to prevent the prosecution of cases in which a defendant allegedly transports an underage female against her will.

The joint motion to dismiss Count Two will be denied.

## II.

### Joint Motion to Suppress Evidence Seized and Statements Given

The defendants jointly move this Court to suppress evidence seized by Pennsylvania state troopers during a search of the defendants' persons incident to their arrest and during two searches of an automobile that was in the possession of Defendant Huslage. They also move to suppress statements given by the defendants to an agent of the Federal Bureau of Investigation following their arrest.

## A. Search Incident to Arrest

■ Pennsylvania state troopers made a warrantless arrest of both the defendants on the evening of July 8, 1979 outside the Mainliner Motel in Clearfield County, Pennsylvania. The troopers had ample probable cause to support the arrests. Earlier in the evening, C.T., the alleged victim, had told an officer of the state police that the defendants had transported her from New Mexico against her will, that they had sexually abused her, and that they were armed. Troopers also had spoken to an employee of the motel where the defendants and C.T. had been staying. This employee stated that C.T., naked, bruised and scared, had come to her seeking help. Moreover, one of the troopers had observed C.T. in a shaken condition. "[P]robable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest." *United States v. McManus*, 560 F.2d 747, 750 (6th Cir. 1977), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 798 (1978).

■ Where probable cause exists, police do not need a warrant to arrest a suspected felon in a public place. *See United States v. Watson*, 423 U.S. 411, 414–24, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). The troopers did not violate any right of the defendants when they searched the defendants' persons incident to valid, custodial arrests. *See Michigan v. DeFillippo*, —— U.S. ——, 99 S.Ct. 2627, 61 L.Ed.2d 343, 348 (1979); *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

## B. Searches of Automobile

[6–8] Following the arrest of the defendants, the state police had Defendant Huslage's Volvo towed to the police barracks. At approximately 1:30 A.M. on July 9, 1979, troopers obtained a warrant from a state magistrate authorizing them to make a nighttime search of the automobile and the defendants' motel room. The application for the warrant adequately described the premises to be searched and the items to be seized. Trooper Schaffer was the affiant on the search warrant application.

The facts presented by Trooper Schaffer to establish probable cause came from an interview that he had had with C.T. She had told him that the defendants had transported her against her will from New Mexico to Pennsylvania, that they possessed illicit drugs, that they were armed with a pistol and that she had seen the pistol in the vehicle. An affidavit accompanying a search warrant application may contain hearsay if that hearsay comes from a reliable source. *See Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). A victim of a crime is considered to be reliable unless evidence in the affiant's possession indicates the contrary. *See United States v. Mahler*, 442 F.2d 1172, 1174–75 (9th Cir.), *cert. denied*, 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971); *People v. Ramey*, 16 Cal.3d 263, 269, 127 Cal.Rptr. 629, 632, 545 P.2d 1333, 1336, *cert. denied*, 429 U.S. 929, 97 S.Ct. 335, 50 L.Ed.2d 299 (1976); *State v. Paszek*, 50 Wis.2d 619, 630–31, 184 N.W.2d 836, 842–43 (1971). The facts contained in Trooper Schaffer's affidavit constituted probable cause to search the motel room and the automobile.

The defendants, besides alleging a lack of probable cause, assert other challenges to the legality of the seizure made on July 9. These challenges arise from the fact that the police searched the Volvo twice on July 9. Using flashlights, troopers conducted their initial search at approximately 4:10 A.M.; they did not seize any evidence. The warrant, by its terms, had to be served by 5:00 A.M. At approximately 10:00 A.M., upon questioning by Trooper Schaffer, C.T. reaffirmed her earlier statement that she had seen a pistol in the automobile during the cross-country trip. Trooper Schaffer immediately conducted a second search. Aided by natural light, he found a Beretta pistol tucked behind a loose piece of upholstery. Later on July 9 Trooper Schaffer filed a return on the warrant, listing the weapon and its leather case.

The defendants argue that the seizure of the pistol violated the Fourth Amendment, as applied to the states through the Four-

teenth Amendment, because the police conducted the search pursuant to a stale warrant that had already been used once. This Court finds on three independent grounds that the police activity that resulted in the seizure of the pistol did not violate the defendants' Fourth Amendment rights. We address the merits of Defendant Stewart's challenges rather than deciding the difficult question of standing that could be raised in the wake of *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

First, although the state police did search the Volvo after the warrant, according to its terms, had expired, this action under the circumstances does not rise to the level of a constitutional violation and should not prevent federal authorities from using the evidence in a federal prosecution. Pennsylvania Rule of Criminal Procedure 2005 requires that a search warrant "direct that the search be executed within a specified period of time, not to exceed two (2) days from the time of issuance." This rule seeks to prevent police searches where the probable cause supporting the search has grown stale. *See Commonwealth v. McCants*, 450 Pa. 245, 299 A.2d 283 (1973). In the present case, Trooper Schaffer searched the vehicle within nine hours after the magistrate had issued the warrant and within twelve hours after the police had arrested the defendants and had seized the Volvo. The probable cause supporting the search had not become stale. The search did not contravene the purpose underlying Rule 2005; a federal court should therefore admit the evidence in a federal prosecution.

Second, the fact that the police made two entries into the Volvo pursuant to a single search warrant does not require a finding that the police violated the Fourth Amendment rights of the defendants. The question is not whether the police went through the door of the vehicle twice, but rather, whether the search conducted at 10:00 A.M. was a continuation of the search that had been initiated at 4:10 A.M. *See United States v. Bowling*, 351 F.2d 236, 241 (6th Cir. 1965), *cert. denied*, 383 U.S. 908, 86 S.Ct. 888, 15 L.Ed.2d 663 (1966) (entries onto premises on successive days pursuant to single warrant upheld); *State v. Swain*, 269 N.W.2d 707, 718–19 (Minn.1978) (seizures from search that continued over three-day period pursuant to single warrant upheld where probable cause continued to exist and police reasonably needed the time to conduct an effective search, which involved use of chemical tests). *Cf. United States v. Soriano*, 482 F.2d 469, 476 (5th Cir. 1973) (subsequent intrusions close in time and similar in nature are not illegal if they do not "significantly increase a pre-existing, legitimate interference with a protected interest"); *United States v. Sherman*, 430 F.2d 1402, 1406 (9th Cir. 1970), *cert. denied*, 401 U.S. 908, 91 S.Ct. 865, 27 L.Ed.2d 805 (1971) (fact that portion of search begun on highway was necessarily continued to a short time later to permit examination of trunk does not change legal search to illegal one). After carefully examining the circumstances of the present case, we find that the second search was merely a continuation of the initial intrusion. Inadequate lighting prevented the police from thoroughly searching the vehicle at 4:10 A.M. The scope of the two searches was identical. Probable cause for the search still existed at 10:00 A.M. Trooper Schaffer acted reasonably when he entered the Volvo during daylight to renew his search for the weapon. Under this analysis, the expiration time of the search warrant does not create a problem.

Finally, even if our conclusions about the staleness of the search warrant and the continuing nature of the search are erroneous, we still would not find that Trooper Schaffer acted illegally when he searched the vehicle at 10:00 A.M. Relying on the "automobile exception" to the warrant requirement, we hold that the police did not need a warrant to search the Volvo during the morning of July 9. *See Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). If the police have probable cause to search a vehicle when they stop it on the highway, they instead may search it later at the station house without obtaining a warrant. *See Texas v.*

*White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975). Lighting conditions justified the delay until 10:00 A.M. of the completion of the station house search. The possible presence in the automobile of a firearm underscores the reasonableness of a warrantless search. *See Cady v. Dombrowski*, 413 U.S. 433, 447, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

 On July 10, 1979, the state police obtained a search warrant from a magistrate authorizing a third entry into the automobile. Alleging a lack of probable cause, the defendants also attack this search. During the search the police seized a bedsheet and a pair of boots. The application for the warrant identified with adequate specificity the vehicle to be searched and the items to be seized. Trooper Schaffer again served as affiant for the search warrant application. C.T. provided the facts necessary to establish probable cause to seize the bedsheet. She told police that she had seen Defendant Huslage wrap a piece of the bedsheet around his hand to cover a tatoo immediately before he committed a robbery in Indianapolis. Under the analysis previously discussed, an application for a search warrant can contain information obtained from C.T. The police department of Walla Walla, Washington provided the facts necessary to establish probable cause to seize the boots. A Walla Walla police officer informed Trooper Schaffer that a Beretta pistol and a pair of boots had been taken in a burglary on June 29 in Walla Walla. Hearsay information obtained from police officers is considered to be reliable and will support the issuance of a search warrant. *See United States v. Merchant Diamond Group, Inc.*, 565 F.2d 252, 253 (2d Cir. 1977). Probable cause to believe that the bedsheet and the boots would be found in the Volvo came from the personal observations of the affiant made during his initial, lawful search of the automobile.

## C. *Statements Given to FBI*

In addition to challenging the seizure of various pieces of evidence, the defendants also move to suppress statements that they made to FBI Agent Galloway following their arrest. The state police had arrested the defendants at approximately 10:00 P.M. on July 8. Trooper Schaffer orally gave the defendants their *"Miranda* rights" at the time they were taken into custody. About midnight, the state police took the defendants to the office of a state magistrate. At the magistrate's office, the police swore out a complaint and obtained a warrant to search Mr. Huslage's Volvo and the defendants' room at the Mainliner Motel. The magistrate set bond for the defendants and was informed that Defendant Huslage would attempt to retain private counsel. Huslage testified that he does not remember the magistrate ever speaking directly to him. Several days elapsed before Huslage obtained an attorney. Soon after he did retain counsel, the Commonwealth conducted a preliminary hearing for both defendants.

During the afternoon of July 10, 1979, Special Agent Galloway separately interviewed both defendants. Neither defendant had yet retained an attorney. Prior to conducting each interview, Agent Galloway read the defendant his *Miranda* rights. He also informed them of the federal charges that might be brought against them and of the maximum penalties for these offenses. Defendant Stewart signed a "Waiver of Rights" form and had an extensive discussion about the cross-country trip with Agent Galloway. Defendant Huslage, although he acknowledged understanding his rights, and although he answered some questions, refused to sign the Waiver of Rights form. Agent Galloway did not make any promises to induce the defendants to give statements. Furthermore, neither defendant told the agent that he would like to postpone the interview until after he retained counsel.

 We find that Agent Galloway did not violate the defendants' Fifth Amendment rights by taking statements on July 10. Each defendant heard his *Miranda* rights at least twice, once just prior to giving the statement, and both defendants

indicated that they understood their rights. No one made promises or threats to the defendants that might have affected their free will, thus creating the danger of involuntary statements. *See Rogers v. Richmond*, 365 U.S. 534, 544, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). The set of facts now before us closely parallels that set presented to the Supreme Court in *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). The accused in *Butler* had received *Miranda* warnings at the time of his arrest and immediately prior to his questioning by the FBI. The defendant stated that he understood his rights. Although refusing to sign a waiver form, he agreed to speak with the agents. He did not ask the agents to postpone questioning until he could retain a lawyer. Examining these facts, the Supreme Court determined that

> [t]he question is . . . whether the defendant . . . knowingly and voluntarily waived the rights delineated in the *Miranda* case. As was unequivocally said in *Miranda*, mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights.

*Id.* at 372, 99 S.Ct. at 1757, 60 L.Ed.2d at 292. We find that the government has shown that both defendants knowingly and voluntarily waived their respective rights to remain silent.

■ Agent Galloway's questioning likewise did not violate the defendants' Sixth Amendment right to counsel. This right attaches upon the commencement of adversary judicial proceedings. *See Moore v. Illinois*, 434 U.S. 220, 231, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *Massiah v. United States*, 377 U.S. 201, 205–06, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). In *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), the Supreme Court found that such proceedings had occurred when the defendant, with counsel present, was arraigned before a judge on an outstanding arrest warrant. The judge advised the defendant of his *Miranda* rights and committed him to jail.

■ The present defendants, prior to giving statements, had made only one appearance before a judicial officer. That officer, a magistrate rather than a judge, did set bail, but he concentrated primarily on the complaint and the search warrant application. He did not appoint counsel for the defendants, and Mr. Huslage testified that he does not recall the magistrate even speaking to him. Neither the defendants nor the Commonwealth were represented at the proceeding by counsel. We hold that the Commonwealth did not initiate adversary judicial proceedings until the week of July 15, when it conducted a preliminary hearing. Therefore, the defendants had no Sixth Amendment right to counsel when Agent Galloway interviewed them on July 10.

The motion to suppress the evidence seized and the statements given to the FBI will be denied.

### III.

*Joint Motion for Individual Voir Dire of Prospective Jurors*

Fearing that many potential jurors would hesitate to express in open court their views concerning sexual matters, and citing the severe penalty possible for convicted kidnappers (life imprisonment), the defendants jointly move this Court to permit individual voir dire of prospective jurors. Although this Court agrees that many people would feel uncomfortable publicly discussing some of the matters relevant to this case, we believe that we need not incur the inefficiencies inherent in individual voir dire. Rather, we will make all of our inquiries of the jury panel in open court; but we will instruct the prospective jurors, prior to asking certain questions, that they should feel free to answer at side bar if they believe that an accurate response would require them to reveal certain personal or sensitive information. Experience in this Court has shown that prospective jurors will avail

themselves of the opportunity to speak to the Court and counsel at side bar, and that during these private discussions the prospective jurors will conscientiously answer the questions posed.

The motion for individual voir dire will be denied.

## IV.

### *Joint Motion to Sever Counts Three and Four*

Both defendants, for different reasons, move this Court, pursuant to Federal Rule of Criminal Procedure 14, to sever for trial Counts Three and Four. Count Three charges John Niles Huslage with the interstate transportation of a pistol, having previously been convicted of a felony. One essential element of the offense, that the government must prove beyond a reasonable doubt, is that the defendant does have a prior felony conviction. Count Four charges John Niles Huslage with the interstate transportation of a stolen firearm, knowing or having reasonable cause to believe that the firearm was stolen. In order to prove beyond a reasonable doubt that the defendant knew or had reasonable cause to believe that the firearm was stolen, the government will present evidence showing that the defendant himself stole the weapon.

■ Federal Rule of Criminal Procedure 8 permits the joinder in the same indictment of two or more offenses and two or more defendants if they are linked to a common transaction or series of acts. Upon motion by a defendant, the district court may grant a separate trial on some of the counts or for some of the defendants. Federal Rule of Criminal Procedure 14 provides that "[i]f it appears that a defendant . . . is prejudiced by a joinder of offenses or of defendants in an indictment or . . . by such joinder for trial together, the court may order . . . separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." The defendant bears a heavy burden of showing that a joint trial would be

unfairly prejudicial, however. *United States v. Bloom*, 78 F.R.D. 591, 611 (E.D.Pa. 1977). This heavy burden exists because considerations of judicial economy cause the courts to strongly favor trying together all charges that arise from a given set of operative facts. *See United States v. Brady*, 579 F.2d 1121, 1127–28 (9th Cir. 1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979); *United States v. Borish*, 452 F.Supp. 518, 524–25 (E.D.Pa.1978).

■ The indictment does not charge Thomas Albert Stewart as a codefendant in Counts Three or Four; but it does charge him as a codefendant in Count Five, which involves carrying a firearm during the commission of a federal offense. Defendant Stewart argues that if evidence of Huslage's prior conviction is introduced under Count Three and evidence is introduced under Count Four that Huslage stole the weapon involved in Count Five, the jury will find it virtually impossible to disassociate that evidence from Stewart when considering Count Five.

"[A] defendant is not entitled to severance simply because a separate trial would provide him with a better chance of acquittal." *United States v. Alpern*, 564 F.2d 755, 758 (7th Cir. 1977). "Rather, the ultimate question is whether under all of the circumstances, it is within the capacity of the jurors to follow the court's admonitory instructions and, correspondingly whether they can collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements, and conduct." *United States v. Brady*, 579 F.2d 1121, 1128 (9th Cir. 1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979). In *United States v. Boscia*, 573 F.2d 827 (3d Cir.), *cert. denied*, 436 U.S. 911, 98 S.Ct. 2248, 56 L.Ed.2d 411 (1978), a case involving nine defendants, other co-conspirators, a conspiracy count and numerous substantive counts, the Third Circuit concluded "that the scheme here was not so complex nor the actors so numerous that the charges and evidence against each defendant could not be kept separate in the minds of jurors." 573 F.2d at 833. A district court

reached the same conclusion in *United States v. Borish*, 452 F.Supp. 518 (E.D.Pa. 1978), a case involving a fifty-five count indictment against four defendants in which the bulk of the evidence would be introduced against two of the defendants. The present case involves only two defendants and five counts. The jury should have no difficulty in following the Court's instruction to consider the evidence as to each count and each defendant separately. Joinder of all five counts will not unfairly prejudice Defendant Stewart.

Defendant Huslage bases his request for a severance on the argument that Counts Three and Four require proof of crimes that did not arise from the set of operative facts that is involved in the remainder of the counts, and that the admission of evidence on these two unrelated crimes will prejudice unfairly his defense of the three remaining charges. The Third Circuit recently addressed such an argument in *United States v. Busic*, 587 F.2d 577 (3d Cir. 1978), *cert. granted*, —— U.S. ——, 99 S.Ct. 2835, 61 L.Ed.2d 282 (June 5, 1979). The jury in *Busic* had convicted the defendants of conspiracy to distribute drugs, the distribution of illicit drugs, assaulting a federal officer with a dangerous weapon, receiving firearms while being convicted felons and carrying a firearm during the commission of a federal offense. On appeal, the defendants cited as error the refusal of the district court to sever the charge involving the receipt of firearms by felons. They argued that admission of evidence of their prior convictions had prejudiced them in the trial on the remaining offenses; the jury may have convicted them because they were evil men.

The Third Circuit did not find reversible error in the decision of the district judge to refuse to grant a severance. Two factors influenced the appellate court's conclusion. First, the district court had shielded the jury from all information concerning the prior felony convictions other than the bare fact that the defendants did have prior convictions that brought them within the scope of the federal firearms statute. 587 F.2d at 585. The government had not been permitted to present through testimony the factual bases of the convictions and the court had not shown the jury the indictment, which contained some of the details of those convictions. Second, the defendants had raised an entrapment defense, so evidence of the prior convictions was independently admissible to show predisposition. *Id.* In dictum, the Third Circuit stated

that in ruling on a pre-trial motion to sever the district court should determine whether evidence of the prior convictions would be independently admissible on the other counts. If it is determined that the convictions would not be admissible on the other counts—that were these counts to be tried alone the jury would not hear this evidence—then severance should be granted.

*Id.* (footnote omitted).

■ Employing the *Busic* analysis, we find that the denial of Defendant Huslage's motion to sever will not deprive him of a fair trial. We will not permit the jury to learn any details of Huslage's prior felony conviction, other than the fact that he has a conviction that subjects him to the federal firearm statute. Moreover, we will carefully instruct the jury that they may consider the prior conviction only for the limited purpose of determining the defendant's guilt or innocence on Count Three. Of course, if the defendant chooses to testify the government may use his prior conviction for impeachment purposes pursuant to Federal Rule of Evidence 609(a). We also recognize the possibility that evidence of the defendant's prior criminal activities—including those that involve the Beretta pistol that police seized in this case—will be independently admissible on the issue of consent under the kidnapping charge. C.T., the alleged victim, apparently will testify that the defendants intimidated her by telling her about their criminal backgrounds. Furthermore, evidence that Defendant Huslage possessed a pistol will be admissible on Count Five.

Two other considerations reinforce the conclusion reached under the *Busic* analysis.

880

First, the court can easily define the essential elements of the offenses charged in Counts Three and Four, and the average juror should have no difficulty in understanding them. Moreover, the government can satisfy these essential elements without resort to extensive or complex evidence. Thus, the jury should be able to compartmentalize the evidence pertaining to Counts Three and Four. This will minimize any prejudice to Mr. Huslage's defense of the other three counts. Second, a severance would unfairly burden C.T. The government will call her as a witness on Counts Three and Four to establish that Defendant Huslage knowingly transported the firearm in interstate commerce. If we granted a severance, she would be forced again to travel from New Mexico to testify in the presence of a man against whom she has lodged serious charges.

In view of all of the circumstances discussed above, we conclude that Defendant Huslage can receive a fair trial without severing Counts Three and Four. The defendant argues that this decision conflicts with the conclusion reached by District Judge Shapiro in *United States v. Quatermain,* 467 F.Supp. 782 (E.D.Pa.1979). Four counts in *Quatermain* alleged violations of the tax laws relating to the manufacture and distribution of a silencer for a firearm; Judge Shapiro severed a fifth count that charged the defendant with possession of a firearm as a convicted felon.

We believe that the circumstances in *Quatermain* differ in certain critical respects from those in the present case. Judge Shapiro correctly stated that "[t]he principal consideration in ruling on a severance motion is whether a consolidated trial would be so prejudicial to a defendant that it outweighs the convenience, economy, and efficient administration of justice which the government and all defendants deserve." 467 F.Supp. at 784 (citation omitted). In her consideration of the defendant's motion, Judge Shapiro determined that a second trial would not impose a significant burden on the government or the court because of the simple nature of the firearm charge involved. Also, she found that the defend-

ant's prior felony conviction would not be independently admissible on the merits of any of the remaining four counts. In the present case, by contrast, a second trial would impose a significant burden on a sixteen-year-old witness. Moreover, evidence concerning the defendant's prior criminal activities may be independently admissible on the merits of the kidnapping charge. Therefore, we do not find a fundamental conflict between our decision and the decision reached in *Quatermain.*

The motion to sever will be denied.