**UNITED STATES of America**

v.

**Croce Jack GIRESI, Defendant.**

**Crim. No. 79–331.**

United States District Court,
D. New Jersey.

April 18, 1980.

Robert J. Del Tufo, U. S. Atty., D. N. J. by Warren S. Robins, Sp. Atty., U. S. Dept. of Justice, Newark, N. J., for plaintiff.

Roger A. Lowenstein, Lowenstein, Sandler, Brochin, Kohl, Fisher & Boylan, Newark, N. J., for defendant.

1. 26 U.S.C. § 5861 provides, in pertinent parts, that:

 It shall be unlawful for any person—

 \* \* \* \* \* \*

 (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record, or

 \* \* \* \* \* \*

 (i) to receive or possess a firearm which is not identified by a serial number as required by this chapter . . ..

 26 U.S.C. § 5871 in turn provides the penalty for violating this provision:

 Any person who violates or fails to comply with any provision of this chapter shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both, and shall become eligible for parole as the Board of Parole shall determine.

 26 U.S.C. § 5848 contains the crucial definition of "firearm." That section provides, in pertinent parts, that a "firearm" includes "a muffler or silencer for any firearm whether or not such firearm is included within the foregoing definition." Hence, a firearms silencer unidentified by the serial number as required by this chapter can be considered a "contraband firearms."

2. Marginally pertinent is the following procedural aside. Defendant's present attorney is the second defense counsel of record in this matter. Defendant's first attorney represented Giresi from arraignment and admission to bail through the filing of the instant motions, including the briefs in support thereof. After defendant was fully advised of his Sixth Amendment rights, and with the defendant's knowing consent, the Court granted former defense counsel's application for leave to withdraw. Hearing of January 25, 1980.

## OPINION

COOLAHAN, Senior District Judge.

Defendant Giresi is charged in this four-count indictment with violations of federal firearms statutes, 26 U.S.C. §§ 5861(d), 5861(i), 5871,[1] namely, possession of two firearms silencers, both unregistered and lacking the requisite serial numbers. These two silencers were seized from defendant's residence on July 12, 1978 pursuant to a search warrant issued that same day.

■ Presently before the Court is defendant's omnibus pretrial motion, Rule 12(b), F.R.Crim.P. Defendant moves that the Court: (1) dismiss the indictment; and (2) suppress the evidence seized from defendant's residence pursuant to the July 12, 1978 search warrant,[2] or, alternatively, if

One day later, defense counsel entered his appearance. Several weeks later, oral argument was heard on the dismissal and suppression motions filed by former counsel. At argument, present counsel indicated he was anxious to re-brief the suppression motion. As the Court's preliminary review of the dismissal motion revealed its rather specious nature, see note 3 infra, and it frankly thought defendant's first suppression brief to be somewhat rambling, defendant's re-briefing request was granted.

Defendant thereafter timely filed his Supplemental Memorandum. He also submitted several post-argument affidavits in support of his alternative motion for a Franks v. Delaware, supra, hearing. See text accompanying notes 21 22 infra. In the interest of adherence to the letter and spirit of defendant's Sixth Amendment right to the effective assistance of counsel, the Court has ignored any concessions that might have been made in defendant's first brief.

Defendant's supplemental brief is principally concerned with obtaining a favorable ruling suppressing the two firearms silencers which are the sole basis of these charges. In view of our finding infra that the July 12, 1978 warrant for defendant's residence is not dangerously akin to a general warrant and, therefore, that the two silencers should not be suppressed, see text accompanying notes 19-21 infra, we need not presently decide whether any of the other items seized by the Agents executing this and the other three warrants should be suppressed and/or returned. Indeed, it would be improper to do so without an evidentiary hearing. See note 12 infra. To the extent that, consistent with this Opinion, defendant seeks suppression and/or return of any items seized other than the two firearms silencers presently in issue,

suppression is initially denied, that a hearing on the veracity of material representations in the warrant affidavit is then required, *see, Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Only the suppression motion warrants textual discussion.[3]

### SUPPRESSION MOTION

Defendant's motion questions the validity of the July 12, 1978 search warrant for defendant's residence. This warrant is founded entirely upon a 17-page search warrant affidavit of the same date, propounded by Special Agent Bopp of the Bureau of Alcohol, Tobacco and Firearms and Special Agent Luksic of the United States Customs Service. The joint affiants related personal observations garnered during their separate, lengthy undercover investigations of a number of individuals apparently engaged in even more numerous suspected unlawful activities. Fairly read, the affidavit depicts facts indicative of an informal criminal operation centered in and around the Truck Haven Rest, a restaurant and bar in this District. At least three different types of criminal activities, the affidavit relates, regularly occurred at the situs Bar: purchases and sales of stolen property ("fencing"); illegal firearms transactions (gun dealing); and extortionate credit transactions ("loansharking").

Defendant Giresi is mentioned, however, in only the following three portions of the affidavit:

[The Truck Haven Rest or] Bar is operated by George Weingartner, who utilizes the office space in the northeast portion of the first floor of the Bar. The liquor license, however, reflects that Jack Giresi and Christina Weingartner, wife of George are the owners.

\* \* \* \* \* \*

George Weingartner owns the bar and conducts the fencing operation on a day-

---

the Court shall grant defendant leave to move for such relief pursuant to Rule 41, F.R.Crim.P. It might also be noted that it does not presently appear that consideration of any such motion will necessitate adjournment of the trial date peremptorily scheduled herein, see text accompanying note 24 *infra.*

**3.** The motion to dismiss the indictment is unfounded. We deny the same for two reasons: first, defendant lacks standing to challenge this indictment; and, second, assuming he had standing, his motion is unmeritorious as a matter of law. A fuller explanation follows.

It is defendant's contention that Rule 6(d), F.R.Crim.P., has been violated by the disclosure of grand jury testimony and evidence to the two (formerly undercover) Government Agents investigating this and other related offenses. Defendant alleges that this putative violation occurred on August 21, 1979, when George Weingartner, (defendant in Criminal No. *79–332*, co-defendant in Criminal No. *80–21* (D.N. J.)), played several tape recordings in the prosecuting attorneys' office, in the presence of the prosecutor, the two aforementioned Government Agents and (apparently) a companion of Weingartner's. We summarized this event in *United States v. Weingartner*, 485 F.Supp. 1167 (D.N.J.1980), at 1169:

During his initial grand jury appearances, Weingartner expressed a desire to play his tape recordings of certain conversations. On August 2, 1979, he indicated that he had five tapes he wished the grand jury to hear, one of which contained a conversation between Weingartner and two (formerly undercover) Government Agents investigating this and other suspected offenses. In order to avoid wasting the grand jurors' time, the foreman directed that Weingartner first play his tapes for the prosecuting attorneys in their office, so that the prosecutors could preliminarily assess (and thereafter advise the grand jury of) the audibility and relevancy of the tapes. Defendant's reliance upon this event is wholly misplaced. George Weingartner is not a co-defendant of Jack Giresi in this action. They have instead been charged in separate indictments with violations of different federal criminal statutes. That the identical search warrant affidavit formed the bases for the issuance of the warrants for Giresi's residence and Weingartner's office and residence does not divest the two actions of their separate character. This defendant, therefore, lacks standing to challenge this facially valid indictment on the basis of an alleged violation of the putative rights of another target of the grand jury investigation.

In the alternative, and again assuming defendant had the standing we hold he lacks, we would find that his motion should be denied on the merits for the reasons we recently stated in *United States v. Weingartner, supra,* at 1178–1179. Those reasons need not be reiterated here. We instead incorporate them herein by reference.

to-day basis, apparently working in conjunction with Jack Giresi.

\* \* \* \* \* \*

On June 21, 1978, pursuant to prior discussions, Weingartner delivered to your Affiant [Bopp] in his office as aforesaid, one box of Remington .38 caliber match ammunition and one box of Winchester 9 mm. luger ammunition which he had concealed in his file cabinet. Subsequently, on July 7, 1978, Your Affiant met with George Weingartner and Jack Geresi (also spelled Giresi above). They requested Your Affiant to locate a third party, apparently in efforts to collect on some $8,000 worth of stolen property which was delivered by a New York suspect to the third party for purposes of fencing, which resulted in the third party failing to meet his obligations. Your Affiant advised Weingartner and Geresi that Your Affiant had no responsibility for the actions of the third party, after which Your Affiant paid Weingartner $19 for the ammunition purchased in the office on June 21, 1978. Weingartner indicated to Geresi during that conversation in the office that Your Affiant was the one who had purchased Geresi's ammunition. Your Affiant Luksic knows Geresi to be a co-owner with Weingartner of the Truckers Haven Bar and has visited Geresi's residence . . . during April of this year, at which time Your Affiant noted the presence of stereo speakers similar to the stolen stereo speakers sold to Your Affiant by Weingartner as previously described.

Search Warrant Aff., 2–3, 11. The stereo speakers transaction was earlier described in the affidavit: "On April 11, 1978 Weingartner and [another named suspect] sold Your Affiant Luksic two stolen stereo speakers for $40.00." *Id.* at 3.

Much of defendant's argument implicitly rests upon the arguable absence of any direct evidence against defendant Giresi. Defendant asserts that the magistrate's July 12, 1978 finding of probable cause to search defendant's residence is erroneous for several reasons: (1) the affidavit, he alleges, does not relate any facts establishing that firearms, ammunition or stolen property would be found at that time in Giresi's residence; (2) the June 21, 1978 conversation between Agent Bopp, Weingartner and Giresi is vague and confusing, and, in any event, is not probative of the likelihood of evidence then being present in defendant's residence; and (3) the allegation that Agent Luksic notice (otherwise undescribed) stereo speakers "similar to" those suspected stolen speakers earlier sold to him also does not bear on the presence of probable cause to search Giresi's residence for stolen property.[4] He alternatively argues that the warrant did not particularly describe the objects sought.

The Government responds with several counter-arguments. Suggesting that defendant's reading of the warrant affidavit is hypertechnical, the Government urges that an alternative interpretation supports the magistrate's finding of probable cause to search Giresi's residence.

At the July 6, 1978 meeting at the Bar between Agent Bopp, Weingartner and Giresi, Weingartner stated to Giresi that Bopp had earlier purchased Giresi's ammunition. Less than two weeks later, on July 16, 1978, Weingartner told affiant Bopp that Weingartner had a constant source of illegal ammunition. Search Warrant Aff., 10–11. Bopp's subsequent purchase of such ammunition from a dealer to whom he was introduced by Weingartner's card and note tends to corroborate Weingartner's July 7th statement to Bopp.

The Government contends that these events synergistically lead to the reasonable

---

4. In support of his third point, defendant notes that: (i) all stereo speakers are in some sense "similar"; (ii) no information is related in the affidavit supporting the affiant's earlier conclusion that the stereo speakers Weingartner sold the affiant were in fact stolen; (iii) silence in the affidavit as to the date of the theft of the speakers negates any inference that defendant knowingly possessed stolen property; and (iv) the affidavit's silence as to the quantity or location of the speakers seen in defendant's residence also tends to negate any inference that defendant knowingly possessed stolen property.

inference that Giresi and Weingartner maintained some kind of common ownership or consignment relationship with respect to ammunition and firearms stored in the file cabinet in the Bar's office. The Government further suggests that from such relationship the magistrate could reasonably infer that evidence of the conspiracy to violate the above firearms statutes would be found in Giresi's residence.

The Government's first suggested approach does have some merit. However, we need not attempt to uphold this warrant solely on that basis. Instead, as the Government secondly suggests, we focus upon *all* the facts recited in the warrant affidavit, together with reasonable inferences thereof, in reviewing the magistrate's finding of probable cause that Giresi was: (1) associated in fact with a conspiracy to engage in an enterprise consisting of a pattern of racketeering activities, in violation of 18 U.S.C. § 1962 ("RICO statute"); and (2) a conspirator, in violation of 18 U.S.C. § 371, to violate the firearms statutes specifically described in the warrant.

### Probable Cause to Search: Four Ingredients

■ Probable cause of course concerns probabilities, not absolute or near certainties. *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Simply put, probable cause to search means such evidence as would persuade a person of reasonable caution to believe that an offense is or was committed and that evidence of assistance in securing the apprehension or conviction of the perpetrator is located in the place to be searched. *See, e. g., United States v. Watson,* 423 U.S. 411, 417, 96 S.Ct. 820, 824, 46 L.Ed.2d 598 (1976); *Warden v. Hayden,* 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967); *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965); *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). Probable cause

to search is founded upon a logical nexus between "four ingredients: time; crime; objects; and place. . . ." 1 LaFave, W., *Search & Seizure* § 3.7 (1978) (hereinafter "LaFave"). The oft-difficult application of these ingredients belies the relative simplicity of the paradigm. This is demonstrated by our consideration of the interplay of the four ingredients as enumerated below. We need also decide whether or not the warrant described the objects sought with the requisite constitutional particularity.

### Crime: Two Conspiracies

■ The first question is whether the affidavit recites sufficient facts to enable the magistrate to find probable cause that there existed the two conspiracies enumerated on the face of the search warrant: the first to violate the RICO statute, 18 U.S.C. § 1962, and the second to violate the above federal firearms statutes. Affirmative answers are established by a brief review of the affidavit.

The warrant affidavit relates numerous facts depicting ongoing commissions of criminal offenses in and around the Truck Haven Rest.[5] Many of these acts fall within the statutory definition of "racketeering activities", 18 U.S.C. § 1961(1). For example, in excess of ten acts related in the affidavit are arguably indictable under either 18 U.S.C. § 659 (theft from interstate shipment) or 18 U.S.C. §§ 2314, 2315 (interstate transportation of stolen property). Facts are also recited which are indicative of a continuing loanshark operation sited in a trailer immediately adjacent to the Truck Haven Rest. These facts are indicia of several violations of 18 U.S.C. §§ 892–894 (extortionate credit transactions). Inasmuch as more than two "racketeering activities" are alleged in the affidavit, it is probable that a "pattern of racketeering activities" existed, 18 U.S.C. § 1961(5). Taken together, these facts establish that there

---

**5.** The loansharking operation was conducted by another (named) suspected conspirator who maintained an office in a trailer used as the situs of a check-cashing business. The trailer was immediately adjacent to the Truck Haven Rest. Search Warrant Aff. 2. Several suspected illegal firearms transactions also occurred in this trailer. *E. g.,* Search Warrant Aff., 7–8.

probably existed a conspiracy to engage in an enterprise, 18 U.S.C. § 1961(4), relating to a pattern of racketeering activities, 18 U.S.C. § 1961(5), in violation of 18 U.S.C. § 1962. *See generally United States v. Elliot,* 571 F.2d 880, 887–90 (5th Cir.), *cert. denied sub nom., Delph v. United States,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978).

Facts are also related in the warrant affidavit which are indicative of the existence of a conspiracy, 18 U.S.C. § 371, to violate specific federal firearms statutes as described in the warrant; *e. g.,* 18 U.S.C. § 922(a)(1) ("dealing without a license"); 18 U.S.C.App. § 1202(a)(1) ("felony possession"); 26 U.S.C. §§ 5861(d, e) ("unregistered firearms"). The affiants allege the commission of at least eight separate violations of federal firearms statutes, most of which involved habitués of the Truck Haven Bar and its adjacent trailer. In short, the affidavit recites facts which would convince even the skeptical of the likelihood that these named persons and others conspired to violate the above firearms statutes.

We therefore conclude that the requisite ingredient of "crime" is present, as there is probable cause to believe that there existed: (1) a conspiracy to violate the RICO statute; and (2) a conspiracy to violate the enumerated firearms statutes.

*Nexus Between "Objects" and "Place"*

We earlier indicated our doubt as to the existence of the requisite crime-objects-place nexus, absent probable cause that Giresi (or the occupant of the search situs) was either associated in fact with the conspiracy to violate the RICO statute or a conspirator to violate these firearms statutes. We now turn to consider whether the affidavit relates sufficient facts to support the magistrate's finding that Giresi was involved in the two conspiracies.

Apparently anticipating that we might chart this line, defendant attempts to deflect us off-course by his contention that "the affidavit on its face shows no probable meeting of the minds between Giresi and others concerning an overall criminal enterprise which implicates the man or his house. . . . At best, Giresi is being accused of 'guilt by association', rather than participation in any coordinated criminal act." Defendant's Supplemental Memorandum 13–14. Although defendant's argument is superficially appealing, we nonetheless find it unpersuasive in the case at bar. Fair consideration of *all* the facts recited in the warrant affidavit, and the reasonable implications and inferences thereof, convinces this Court that the magistrate properly concluded that Giresi was personally involved in both of these conspiracies.

Giresi's position as a co-owner of the Truck Haven Rest, the operational hub of both conspiracies, is, without more, at least suggestive of his association in fact with the conspiracy to violate the RICO statute, 18 U.S.C. § 1962. While it would perhaps delve far into the realm of speculation to uphold the probable cause finding solely because of this fact, we need not decide that particular question today. This affidavit, taken as a whole, contradicts the otherwise equally plausible inference that Giresi might be a "silent" partner in the Bar, uninformed of the criminal activities regularly occurring there. It relates that "George Weingartner . . . conducts the fencing operation on a day-to-day basis, *apparently* working in conjunction with Jack Giresi." Search Warrant Aff., 2 (emphasis supplied). It would not be "apparent" to the undercover Government Agents frequenting the Bar and personally participating in its illegal firearms and stolen property transactions that Giresi worked with Weingartner on a daily basis unless the affiants had observed Giresi at the Bar on a regular basis. Although "[m]ere presence at the scene of a criminal offense does not [alone] support an inference of guilt," *Newsom v. United States,* 335 F.2d 237, 239 (5th Cir. 1964),[6] there clearly "is probable

---

6. *Accord, United States v. Chadwick,* 393 F.Supp. 763, 768 (D.Mass.1975), *aff'd* 532 F.2d 773 (1st Cir. 1976), *aff'd,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). *See also United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92

cause to arrest a person who on a continuing basis is present at a place where criminal activity is openly and repeatedly conducted." 1 LaFave, *supra*, § 3.6.[7]

Also probative of Giresi's probable association in fact with the conspiracy to violate the RICO statute is Agent Luksic's observation in Giresi's apartment of stereo speakers "similar to" the suspected stolen speakers the Agent had previously purchased from Weingartner at the Bar. Although the affidavit does not recite any facts tending directly to substantiate the Agent's conclusory allegation that the speakers he purchased from Weingartner were stolen, the magistrate might have credited the allegation from the bargain sale price at which Weingartner sold the speakers ($40.00 for a pair). *But see* note 4 *supra.*

The Court also finds unmeritorious defendant's argument that probable cause that Giresi was associated in fact with the racketeering conspiracy must be founded upon direct evidence of a "meeting of the minds". If a "jury is entitled to infer the existence of an enterprise [in violation of 18 U.S.C. § 1962] on the basis of largely or wholly circumstantial evidence," *United States v. Elliot, supra*, 571 F.2d at 898, *a fortiori* the magistrate may rely upon entirely circumstantial evidence in determining that Giresi probably was associated in fact with the enterprise whose situs was the Bar co-owned by this defendant. The continuing nature of the criminal activities in the Bar belies any presumption that its owner might be unaware of and uninvolved in these illicit operations. We therefore conclude that defendant Giresi probably was associated in fact with the conspiracy to engage in an enterprise consisting of a pattern of racketeering activities in violation of 18 U.S.C. § 1962.

We have even less difficulty upholding the magistrate's finding of probable cause that Giresi conspired with other named and unnamed persons to violate the enumerated firearms statutes. We agree with the Government that the magistrate could reasonably infer that Giresi and Weingartner maintained some kind of common ownership arrangement with respect to ammunition and possibly firearms. The facts recited in the affidavit which tend to link Giresi with this conspiracy include Weingartner's July 7th statement to the affiant to the effect that the affiant had earlier purchased Giresi's ammunition from Weingartner. The latter's storage of "Giresi's ammunition" in a file cabinet in "his" office also tends to establish two more facts: as the co-owner of the establishment and the subject ammunition, Giresi probably had access to the office and its file cabinet; and, the firearms conspiracy had not terminated. Read in its totality, the affidavit thus provides an adequate factual basis for the finding that Giresi conspired to violate the above firearms statutes. This finding, however does not end the inquiry as to "place." Also requisite to an ultimate determination of probable cause to search is the establishment of an objects-place-time relationship: evidence that the objects sought would then be found in the place to be searched.

Although the 17-page warrant affidavit seemingly paints Giresi as a mere bit player in a Three Penny Opera, we nevertheless conclude that even those with minor supporting roles in this opera's three acts (loan-sharking, gun dealing and fencing) are likely concealing evidence of the schemes in their respective abodes. But even if *we* did not think this were *probably* so, nonetheless we shall endeavor to uphold the magistrate's finding of probable cause in these circumstances. "It may be that . . . alternative readings of the affidavit are

L.Ed. 210 (1948); *United States v. Rosario*, 543 F.2d 6 (2d Cir. 1976).

7. *See, e. g., Ker v. California*, 374 U.S. 23, 36–37, 83 S.Ct. 1623, 1631, 10 L.Ed.2d 726 (1963), wherein the United States Supreme Court upheld a finding of probable cause to arrest the wife of the suspect where she jointly occupied the apartment used as the operational

base for a series of unlawful narcotics transactions. Here, the magistrate could likewise infer from the totality of the facts in the affidavit that Giresi was associated in fact with the numerous and continuous criminal activities occurring in and adjacent to the Truck Haven Rest.

equally reasonable, but it is neither our nor the district court's function as reviewing courts to substitute our interpretation of the facts in the affidavit for that of the magistrate." *United States v. Hatfield*, 599 F.2d 759, 762 (6th Cir. 1979).

This affidavit concededly contains little direct evidence that the items sought in the warrant would be found in Giresi's apartment. Indeed, the only direct link between "place" and "objects" is Agent Luksic's earlier statement that he noticed some speakers in defendant's apartment "similar to" the pair of allegedly stolen speakers the Agent had previously purchased from Weingartner. We doubt that this single, isolated reference would satisfy the magistrate or this Court. But it seems as probable to us as it apparently did to the magistrate (who simultaneously issued several search warrants based on this same affidavit) that even the lowliest of actors in this grand opera would have the items sought in his or her residence. Although Giresi may not have received top or second billing on the marquee, he is not portrayed as a mere stagehand.

> [O]f course it cannot follow in all cases, simply from the existence of probable cause to believe a suspect guilty, that there is also probable cause to search his residence. If that were so, there would be no reason to distinguish search warrants from arrest warrants . . . ··
>
> [But t]he situation here does not differ markedly from other cases wherein this court and others, albeit usually without discussion, have upheld searches although the nexus between the items to be seized and the place to be searched rested not on direct observation, as in the normal search-and-seizure case, but *on the type of crime*, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property. . . .

*United States v. Lucarz*, 430 F.2d 1051, 1055 (9th Cir. 1970) (emphasis supplied); *accord, United States v. Spearman*, 532 F.2d 132, 133 (9th Cir. 1976); *United States v. Mulli-*

gan, 488 F.2d 732, 736 (9th Cir. 1973), *cert. denied*, 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974). The scope of the two conspiracies and the existence of facts substantiating defendant's probable involvement with these schemes enabled the magistrate to reasonably infer that the items sought in this warrant are "the types of things" a person with a supporting but central role in the on-going criminal enterprises "might possess" in his residence. *United States v. Pheaster*, 544 F.2d 353, 373 (9th Cir. 1976), *cert. denied sub nom., Inciso v. United States*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977).

Moreover, it is not this Court's role to take adversarial issue with the magistrate's finding of probable cause to search Giresi's residence. Constitutional policy encourages the use of a search warrant, a procedure incorporating a before-the-fact and independent determination of probable cause by a neutral judicial officer, by according considerable deference to the magistrate's finding. *See, e. g., United States v. Ventresca, supra*, 380 U.S. at 109, 85 S.Ct. at 746; *Jones v. United States*, 362 U.S. 257, 270–71, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960); *United States v. McNally*, 473 F.2d 934, 937 (3d Cir. 1973). Magistrates must not be confined "by niggardly limitations or by restrictions on their use of common sense." Warrants, therefore, must not be invalidated "by interpreting the affidavit in a hypertechnical, rather than a common sense, manner" because "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca, supra*, 380 U.S. at 109, 85 S.Ct. at 746.

> [W]hen a court is faced with a situation wherein there is at issue the *quantum* of evidence necessary to be alleged to support a finding of probable cause, and when the affidavit arguably shows circumstances which could support a determination that evidence of a federal crime would probably be found in the place to be searched, the court should follow the practice expressed in *United States v. Lewis*, 392 F.2d 377, 379 (2d Cir.), *cert.*

*denied*, 393 U.S. 891, 89 S.Ct. 212, 21 L.Ed.2d 170 (1968):

> One of the best ways to foster increased use of warrants is to give law enforcement officials the assurance that when a warrant is obtained in a close case, its validity will be upheld.

*United States v. Giacalone*, 541 F.2d 508, 516 (6th Cir. 1976) (emphasis in original).

For all of the foregoing reasons, this Court upholds the magistrate's finding of probable cause to believe that the "objects" sought in this warrant would be found in the "place" to be searched.

### *"Time": Present Probable Cause*

Defendant also contends that any probable cause to search his residence which may have earlier existed was dissipated by the time the warrant was issued on July 12, 1978. Apparently hoping that the Court would not adopt the conspiracy approach it has, defendant's argument principally relies upon the lapse of time between (a) Agent Luksic's April 1978 observation in defendant's apartment of stereo speakers "similar to" certain suspected stolen stereo speakers earlier purchased by the affiant from George Weingartner and (b) the July 12, 1978 issuance of the search warrant.

Defendant's staleness argument is without merit. Although it is surely a "manifest" requirement of the Fourth Amendment that probable cause exist at the time of the warrant's issuance, *Sgro v. United States*, 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932), the requisite logical nexus between the ingredients of place, objects and time is not an immutable essence. The presence or absence of the requisite nexus instead depends upon several factors: the nature and regularity of the suspected illegal activities; the nature of the property sought; and the likelihood that the items sought are presently located within the premises to be searched. Several Circuits of the United States Court of Appeals have therefore reasoned that "where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant." *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972), quoted in *United States v. Harris*, 482 F.2d 1115, 1119 (3d Cir. 1973); *cf. United States v. Townsend*, 394 F.Supp. 736, 745 (E.D.Mich.1975). These and other cases teach that we should allow the magistrate to infer that financial records and other business-related documents are ordinarily and regularly maintained by a suspect centrally involved in an illegal enterprise operating behind the front of an apparently lawful restaurant and bar. *Cf. United States v. Forsythe*, 560 F.2d 1127, 1132 (3d Cir. 1977).

There are facts recited in this affidavit which are indicative of the commission of a series of on-going criminal offenses. Also significant is the absence of any facts from which one might even speculate that either of the two enumerated conspiracies had terminated. Additionally, the reference in the affidavit to the questioning of the criminal "credentials" of one of the two undercover Agents and that Agent's subsequent involvement with his inquisitor in a suspected criminal violation bolsters the propriety of our inferential reasoning that these two conspiracies were continuing at the time of the warrant's issuance. *See* Search Warrant Aff., 5. Not only was there "no reason to believe that [either conspiracy] had ceased", *United States v. Forsythe, supra*, 560 F.2d at 1132, but also there was no factual basis for inferring that Giresi had withdrawn from either of the two conspiracies.

This Court therefore rejects defendant's argument that the requisite probable cause to search for the objects described was not present at the time of the warrant's issuance.

### *"Objects": Were They Particularly Described?*

Greater weight is due defendant's alternative argument that the warrant did not "particularly describ[e] the . . . things to be seized" in contravention of that

provision of the Fourth Amendment. This warrant, defendant avers, like the general warrants despised by the Founders, authorizes such a sweeping and indiscriminate search through and seizure of defendant's private papers and property that all of its fruits should be suppressed.

The July 12th warrant for the search of the defendant's residence authorized the search for and seizure of the following items:

CONTRABAND FIREARMS, UNITED STATES CURRENCY, PERSONAL TELEPHONE AND ADDRESS BOOKS, RECORDS OF FINANCIAL TRANSACTIONS, PERSONAL NOTEBOOKS, STOLEN PROPERTY, AND OTHER DOCUMENTS AND ITEMS WHICH ARE CONTRABAND, FRUITS, INSTRUMENTALITIES AND EVIDENCE OF A CONSPIRACY (18 U.S.C. 371) TO VIOLATE THE FIREARMS STATUTES (18 U.S.C. 922–a–1, DEALING WITHOUT A LICENSE; 18 U.S.C. APPENDIX 1202–a–1, FELONY POSSESSION); AND 26 U.S.C. 5861–d and 3, (UNREGISTERED FIREARM)); AND CONSPIRACY TO VIOLATE 18 U.S.C. 1962 RELATING TO A RACKETEERING ENTERPRISE.

The inventory of the numerous items seized from defendant's residence pursuant to this warrant is reproduced in the margin.[8]

Analysis of defendant's particularity argument is facilitated by grouping the warrant listing into three categories. In descending order of specificity, the warrant descriptions may be broken down as follows:

Category one: "contraband firearms";

Category two: "personal telephone books, records of financial transactions, personal notebooks" and other documents and items which are contraband, fruits, instrumentalities, and evidence of a conspiracy (18 U.S.C. § 371) to violate [enumerated and defined federal] firearms statutes . . . and a conspiracy to violate 18 U.S.C. § 1962 relating to a racketeering enterprise";

Category three: "United States currency" and "stolen property".

This Court is of course mindful of the importance of compliance with the Fourth Amendment's command that search warrants must "particularly describ[e]" their objects. More than fifty years ago, the United States Supreme Court observed that the particularity requirement serves two principal objects:

The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is to be left to the discretion of the officer executing the warrant.

*Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927); *but cf.* 2 LaFave, *supra*, at § 4.6(a), citing *State v. Muldowney*, 60 N.J. 594, 600, 292 A.2d 26 (1972); McKenna, J., *The Constitutional Protection of Private Papers*, 53 Ind.L.J. 55, 78 (1977) ("the protection afforded by the specificity requirement is more apparent than real").[9]

The category one description, "contraband firearms," surely comports with the specificity requirement of the Fourth Amendment. Firearms and firearms silencers which are not identified by the requisite serial number are "contra-

---

8. "10 firearms and bullets"; "two silencers"; "personal phone books, phone numbers on papers, financial records, phone bills, safety deposit WD key, business cards"; "8 speakers & 1 empty speaker box"; "cash box 76—2.00 bills + misc. papers etc."; "22 silver dollars—17—U.S. $2.00"; "Bell & Howell movie projector & box"; "misc. jewelry & watches"; "490.00 US Currency"; and "$17.00 in U.S. Currency."

9. *See also Andresen v. Maryland*, 427 U.S. 463, 480–81, 96 S.Ct. 2737, 2748–49, 49 L.Ed.2d 627 (1976); *James v. United States*, 416 F.2d 467, 473 (5th Cir. 1969); *State v. Quintana*, 87 N.M. 414, 534 P.2d 1126, 1129–30, *cert. denied*, 88 N.M. 29, 536 P.2d 1085 (Ct.App.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

band." *See* note 1 *supra.* The presence or absence of this serial number involves a determination of fact, not of opinion; it is a factual determination quickly, easily and accurately made on-the-spot by the searching officer. The necessity of the officer's making such a factual determination does not vest him with impermissible "[discretion] as to what is to be taken", *Marron v. United States, supra,* 275 U.S. at 196, 48 S.Ct. at 76, because the firearm in question is either identified by the serial number or it is not. In these circumstances, the Fourth Amendment requires no more specific description than "contraband firearms." *See also United States v. Bell,* 48 F.Supp. 986, 998–99 (S.D.Cal.1943).

Less specific and consequently of greater concern are the category two descriptions. The nature of a search for these items, broadly categorized as private papers, is far-reaching; the warrant authorizes the searching officer to inspect every piece of paper and document found in defendant's residence in order to determine its relevance to the above-enumerated conspiracies. This has prompted the comment that "[t]he intrusive nature of a search for private papers justifies a . . . stringent standard of specificity" similar to that mandated by the First Amendment when books and papers are sought because of the ideas contained therein. McKenna, J., *The Constitutional Protection of Private Papers,* 53 Ind.L.J. 55, 76 (1977). *Cf. Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965).

▬▬▬ The justifiable concern about the intrusive nature of a search through a person's private papers does not, however, unalterably compel a conclusion that the category two descriptions are constitutionally deficient. It is now settled that a warrant may properly authorize the search for and seizure of a suspect's private papers—such a search is not violative of the target's Fifth Amendment privilege against self-incrimination. *Andresen v. Maryland,* 427 U.S. 463, 473–77, 96 S.Ct. 2737, 2745–46, 49 L.Ed.2d 627 (1976). Equally well-established is the modern rule that executing officers may search for and seize "mere evidence" so long as there exists the requisite probable cause "to believe that the evidence sought will aid in a particular apprehension or conviction." *Warden v. Hayden, supra,* 387 U.S. at 307, 87 S.Ct. at 1650. Thus, there cannot be a serious quarrel with the conclusion that the types of private papers listed in category two could constitute evidence of either or both of the conspiracies and the enumerated substantive underlying offenses. *See In re Search Warrant Dated July 4, 1977, etc.,* 187 U.S. App.D.C. 297, 304 n. 4, 572 F.2d 321, 328 n. 4 (1977), *cert. denied sub nom., Founding Church of Scientology v. United States,* 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978).[10]

*Andresen v. Maryland, supra,* is direct authority for the conclusion that the category two descriptions speak with the requisite specificity. The *Andresen* search warrants authorized the seizure of a long list of specified documents and papers "pertaining to sale, purchase settlement and conveyance" under false pretenses of a specified plot of land. The warrants concluded with authorizations to seize "other fruits, instruments and evidence of crime at this (time) unknown." 427 U.S. at 479 & n. 10, 96 S.Ct. at 2748 & n. 10. Rejecting petitioner's con-

---

10. The United States Court of Appeals for the District of Columbia Circuit put it well when it stated:

There is nothing in the nature of the crime of conspiracy as proscribed by 18 U.S.C. § 371 that prevents a magistrate from issuing a search warrant to seize evidence that such crime has been committed. In fact, conspiratorial crimes are conducted with more secrecy than many other crimes, and *search warrants that seek evidence of conspiracy, and otherwise meet the required standards, may*

*extend to all relevant evidence of that crime. Otherwise, alleged conspirators would occupy a special protection from prosecution that is not available to other accused persons.* . . . While [conspiracy] may have certain subjective elements, like the criminal intent in *Andresen v. Maryland, supra,* the evidence that proves such subjective elements may be objective, tangible and constitute clear proof.

*In re Search Warrant Dated July 4, 1977, etc., supra,* 572 F.2d at 328 n. 4 (emphasis supplied).

tention that the latter all-inclusive authorization made the warrants overbroad, vague, and hence dangerously akin to a general warrant, the Court instead construed away any constitutional harm by reading this clause to authorize only a search for those documents which on their face related to the enumerated suspected criminal offense. Read in context, the Court held, the *Andresen* warrants "did not authorize the executing officers to conduct a search for evidence of other crimes" and hence were not unconstitutionally general in nature. 427 U.S. at 481–82, 96 S.Ct. at 2749. If the *Andresen* warrant's implicit reference to the suspected crime satisfies the minimum specificity requirements of the Fourth Amendment, surely the category two items in the July 12th warrant also speak with the requisite particularity, for the scope of the search and seizure authorized by category two is *expressly* limited by the specific descriptions of the suspected crimes.

Just as execution of the *Andresen* warrants required an on-the-spot factual determination by the executing officer of the relevance of each inspected document to the purchase, sale and conveyance of a specified plot of land, execution of this warrant necessitated a similar factual determination—the evidentiary relevance of each inspected document to the two enumerated conspiracies and the specified underlying

substantive offenses.[11] The critical question we face is resolved in *Andresen*: that is, the facial validity of a warrant authorizing the examination of every document in the subject premises in order to determine its relevance to the enumerated criminal offense. In sum, the analytical framework expressed by the Supreme Court in *Andresen* persuades this Court that the search and seizure authorized by the category two descriptions is not unconstitutional. *Andresen*, we think, must be read to affirm the constitutional specificity of the descriptions we have listed in category two. 2 LaFave, *supra*, 572 F.2d at 326–28; *but cf. Application of Lafayette Academy, Inc.*, 462 F.Supp. 767, 771 (D.R.I.1978), *aff'd*, 610 F.2d 1 (1st Cir. 1979).

The conclusion that the descriptions in categories one and two comport with the Fourth Amendment's specificity requirement does not necessarily carry over to the category three descriptions, "stolen property" and "United States currency." An authorization to search for and seize "stolen property" not otherwise particularly described seemingly places no inherent restriction on what the officer may lawfully seize: the searching officer has discretion to seize all items of property that he *thinks* are stolen. Unlike "contraband," the illicit nature of "stolen property" is not usually apparent at first glance.[12] Without this warrant's reference to the described conspiracies, the "stolen property" authorization

11. *See also United States v. Bell*, 48 F.Supp. 986, 998 (S.D.Cal.1943) (search incidental to arrest for conspiracy to violate the Espionage Act):

An officer may take possession of a pamphlet which he thinks is related to so wide a conspiracy although the [trial] court might exclude it at the trial as harmless or innocuous. And we should not invalidate the search merely because the officers used some judgment, although they may not have used the same judgment which one skilled in the law, acquainted with the rules of evidence, and who could assay each parcel, would have exercised. If we concede that officers may take only objects which are actually pertinent to the offense with which the person is charged, and at the same time, deny them the right to examine documents, we are creating a rather incongruous situation for them. For, in effect, we tell them that they have the

right to search and seize, in the abstract, but, in the concrete, we forbid them to exercise it with good judgment, . . . [thus] invit[ing] unrestrained explorations.

12. It is nonetheless plausible that the illicit nature (*i. e.*, "stolen") of eight speakers seized, note 8 *supra*, was "immediately apparent" to the searching officers. And if the speakers seized were observed in "plain view" by the officers properly on the scene, their seizure might be lawful. This question, however, concerns the manner of *actual* execution of the search. Only the question of the *facial* validity of the search warrant descriptions as written is presently *sub judice*. *United States v. Burch*, 432 F.Supp. 961, 963 n. 1 (D.Del.1977), *aff'd without opinion*, 577 F.2d 729 (3d Cir. 1978); *accord, Application of Lafayette Academy, Inc.*, 610 F.2d 1, 4–5 (1st Cir. 1979).

might allow "a search for anything which could have been stolen at any time . . ." *United States v. Burch*, 432 F.Supp. 961, 963 (D.Del.1977), *aff'd without opinion*, 577 F.2d 729 (3d Cir. 1978). On the other hand, it might be argued that only such "stolen property" as is clearly related to the specified crimes might be seized.

▋ The sufficiency of the description "United States currency" is also questionable, for the authorization must have been based upon inferential reasoning that all currency found in the place searched is the fruit or evidence of the specified conspiracies. *See* 2 LaFave, *supra*, § 4.6(c), citing *People v. Holmes*, 20 Ill.App.3d 167, 312 N.E.2d 748 (1974). It may be that the surfeit of detail in the warrant affidavit had a synergistic effect on the magistrate and led him to conclude that Giresi is engaged full-time in the two enumerated conspiracies. Such a conclusion, in turn, could foster an inference that any currency then in Giresi's apartment is the fruit of the enumerated conspiracies. *See* 18 U.S.C. § 1961(4) (definition of "enterprise"). However, such an inference would only be the result of far too-strained a reading of this affidavit. With respect to this warrant and this defendant, we conclude that the category three descriptions do not comply with the particularity requirement of the Fourth Amendment.

### Severability of the Insufficient From the Specific Warrant Descriptions

This conclusion of partial descriptive insufficiency necessitates our reluctant appraisal [13] of a difficult issue of Fourth Amendment jurisprudence [14] for which there at first glance exists a curious division of opinion between the federal and state courts: must the particularly describ-

ed "contraband firearms" silencers which are the subject matter of this indictment be suppressed because the warrant is tainted by the constitutionally infirm descriptions "United States currency" and "stolen property"?

The great weight of authority is that severance of the unparticular descriptions is permitted except where the warrant is facially general in nature. Research undertaken by this and other courts [15] collectively indicate that several state courts have considered this precise question. The seminal and leading [16] state court decision is that of the Supreme Court of California in *Aday v. Superior Court of Alameda County*, 55 Cal.2d 789, 793, 13 Cal.Rptr. 415, 420, 362 P.2d 47, 52 (1961). *Aday* held that a warrant authorizing "the search for and seizure of" particularly described objects, "if otherwise valid, [is] not rendered illegal by" the search for and seizure of other listed items not particularly described in the warrant. *Ibid.* In the following breath, however, the *Aday* Court cautioned that the severance doctrine must be held unavailable where the inclusion of the unparticular descriptions made the warrant as a whole unconstitutionally general in nature:

> We recognize the danger that warrants might be obtained which are essentially general in character but as to minor items meet the requirement of particularity, and that wholesale seizures might be made under them, in the expectation that the seizure would in any event be upheld as to the property specified. Such an abuse of the warrant procedure, of course, could not be tolerated.

*Ibid.* Other States which have considered this question have unanimously adopted *Aday's* reasoning.[17] One scholarly trial

---

13. *Cf. Ashwander v. TVA*, 297 U.S. 288, 346-48, 56 S.Ct. 466, 482-83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

14. *United States v. Hatfield*,, 599 F.2d 759, 764 (6th Cir. 1979), *rev'g* 461 F.Supp. 57, 58 (E.D. Tenn.1978); *see also Application of Lafayette Academy, Inc., supra*, 610 F.2d at 6.

15. *E. g., People v. Mangialino*, 75 Misc.2d 698, 706-08, 348 N.Y.S.2d 327, 337-39 (Cty.1973) (collecting many of the cases cited in notes 17 and 19 *infra* ); 2 LaFave, *supra*, § 4.6(f) n. 86.

16. *Id.*, 75 Misc.2d at 707, 348 N.Y.S.2d at 339.

17. In alphabetical order by State: *State v. Johnson*, 160 Conn. 28, 34, 273 A.2d 702, 705 (1970); *United States v. Ketterman*, 276 A.2d

judge summed up the state court cases as follows:

> [T]here is strong and persuasive authority in other jurisdictions to permit a severance in order to save a warrant or a search. This would seem to be supported by logic as well. If there was probable cause to issue a search warrant describing particular items to be seized, and such items are found and those items alone constitute the basis of the criminal charge, there is no reason why some additional unsupported language in the search warrant, while to be avoided, should not be severable, particularly where no items seized thereunder are included as a basis for the criminal charge.

*People v. Mangialino*, 75 Misc.2d 698, 348 N.Y.S.2d 327, 337 (Cty.1973); *accord, People v. Haas*, 55 App.Div.2d 683, 390 N.Y.S.2d 202 (2d Dep't 1976); *see also People v. Hansen*, 38 N.Y.2d 17, 377 N.Y.S.2d 461, 465, 339 N.E.2d 873 (1975).

Notwithstanding these uniform state court decisions, three district courts recently expressed their disagreement with the severance doctrine.[18] *Application of Lafayette Academy, Inc., supra,* 462 F.Supp. at 772; *United States v. Hatfield*, 461 F.Supp. 57, 58 (E.D.Tenn.1978), *rev'd on other grounds*, 599 F.2d 759, 761–62 (6th Cir. 1979); and *United States v. Burch, supra,* 432 F.Supp. at 963–64. But each of these decisions rest upon the critical preliminary finding that the warrant under consideration was dangerously akin to a general warrant.[19] Such a determination is notably absent in the case at bar.[20] It is likewise absent in *Aday, supra,* and in each of the other state court decisions, note 17 *supra,* authorizing severance.

These federal and state court decisions collectively represent jurisprudential efforts to enforce the implied Fourth Amendment prohibition against general warrants. The severance doctrine, however, when properly applied, neither offends nor contravenes this policy. Severance is simply improper whenever "the tainted part of the warrant so contaminate[s] the whole that the entire warrant must perish." *People v. Mangialino, supra,* 348 N.Y.S.2d at 337.

---

243, 247 (D.C.App.1971); *Butler v. State*, 130 Ga.App. 469, 203 S.E.2d 558, 562 (1973); *People v. Russell*, 45 Ill.App.3d 961, 4 Ill.Dec. 579, 360 N.E.2d 515, 517-18 (1977); *People v. Haas*, 55 App.Div.2d 683, 390 N.Y.S.2d 202 (2d Dep't 1976) (*accord, People v. Mangialino, supra*); *State v. Sagner*, 12 Or.App. 459, 506 P.2d 510, 516 (1973); *State v. Clark*, 281 N.W.2d 412, 416 (S.D.1979); *State v. Halverson*, 21 Wash.App. 35, 584 P.2d 408, 409 (1978).

**18.** We agree with *People v. Mangialino, supra,* 348 N.Y.S.2d at 338–39, that many federal courts have, albeit implicitly, allowed severance in the somewhat analogous situation where items *other than those described in the warrant* were unlawfully seized. *See, e. g., United States v. Dunloy*, 584 F.2d 6, 11 n.4 (2d Cir. 1978); *United States v. Cangiano*, 464 F.2d 320, 322 (2d Cir. 1972), *vacated,* 413 U.S. 913, 93 S.Ct. 3047, 37 L.Ed.2d 1023 (1973); *In re No. 191 Front Street, etc. (Kirvin v. United States),* 5 F.2d 282, 284-85 (2d Cir. 1924); *United States v. Langford*, 303 F.Supp. 1387, 1388 (D.Minn.1969); *United States v. Baldwin*, 46 F.R.D. 63, 64 -65 (S.D.N.Y.1969); *United States v. Russo*, 250 F.Supp. 55, 58 .(E.D.Pa.1966); *United States v. Castle*, 213 F.Supp. 52, 56 (D.D.C.1962), *aff'd,* 120 U.S.App.D.C. 398, 347 F.2d 492 (1964), *cert. denied,* 381 U.S. 953, 85 S.Ct. 1811, 14 L.Ed.2d 726 (1965); *United States v. Bell*, 48 F.Supp. 986, 998- 99 (S.D.Cal. 1943) (search incident to arrest); *United States*

*v. Spallino*, 21 F.2d 567, 568 (W.D.N.Y.1927); *United States v. Nine 200-Barrel Tanks*, 6 F.2d 401, 402 (D.R.I.1925).

**19.** Several important factual distinctions between the case at bar and *Burch* and *Lafayette Academy* also demonstrate that severance here is not wholly inconsistent with those decisions.

The *Burch* warrant's principal infirmity was its authorization to search for *any* "stolen property", that is, it sought evidence of *other* crimes. This warrant does not share that fatal flaw. *Compare United States v. Burch, supra,* 432 F.Supp. at 962 *with United States v. Quatermain*, 467 F.Supp. 782,· 786 (E.D.Pa.1979).

*Lafayette Academy* is also factually inapposite to the matter *sub judice.* The warrant as construed authorized a search for evidence of *any* conspiracy or *any* fraud against the United States without reference to the particular student loan program fraud in question. In contrast with the warrant here, the *Lafayette* warrant did not parenthetically describe the nature of the denominated statutory offense. 610 F.2d at 3 4.

**20.** Even the arguably infirm category three descriptions in the July 12th warrant are clearly referenced to the specifically described crimes. *Cf. Andresen v. Maryland, supra,* 427 U.S. at 480- 81, 96 S.Ct. at 2748–49.

We conclude as a matter of law that severance should be allowed in the case at bar. We premise this conclusion on a preliminary finding that this warrant, as a whole, is not dangerously akin to a general warrant. This preliminary finding, in turn, principally rests upon two other findings: first, that the category three descriptions did not expand the scope of the search and seizure beyond that already lawfully authorized by the constitutional categories one and two descriptions;[21] and, second, that even the constitutionally deficient descriptions did not authorize a search for evidence of crimes other than those specifically enumerated and linguistically described in the warrant itself. *Compare In re Search Warrant Dated July 4, 1977, supra,* 572 F.2d at 326–27, *with Application of Lafayette Academy, Inc., supra,* 610 F.2d at 3, 5–6. Therefore, the two silencers seized pursuant to the constitutional category one description need not be suppressed; only those unlawfully seized pursuant to the arguably insufficient category three descriptions may be suppressed if warranted. *See* notes 2, 5 *supra.*

### Application for a Franks Hearing

The Court finally turns to consider defendant's alternative contention that he is entitled to an evidentiary hearing on the veracity of representations made by the joint warrant affiants.

In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court held that a defendant in limited circumstances may challenge the validity of a warrant which is based upon an affidavit containing deliberate falsehoods or representations made in reckless disregard of the truth. An evidentiary hearing, the Court held, is available only when it is first concluded:

(1) that the defendant has made a "substantial preliminary showing," accompanied by an offer of proof or a reasonable explanation of the failure to make such proffer, of "allegations of deliberate falsehood or of reckless disregard for the truth" in the affidavit; *and*

(2) that there does not remain in the affidavit "sufficient content . . . to support a finding of probable cause," after "putting to one side" the false or recklessly made allegations. *Id.,* 438 U.S. at 171–72, 98 S.Ct. at 2685; *see United States v. Young Buffalo,* 591 F.2d 506, 509 (9th Cir.), *cert. denied,* 441 U.S. 950, 99 S.Ct. 2178, 60 L.Ed.2d 1055 (1979).

In his attempt to meet the first-prong of the *Franks* test defendant has submitted three affidavits: his own and those of Messrs. Marra and Adair. He also refers to and relies upon an affidavit filed by George Weingartner in *United States v. Weingartner, supra.* We conclude that defendant's offer of proof does not satisfy the first-prong of *Franks.*

Defendant's own affidavit consists of little more than bald, conclusory denials of his involvement in any criminal activities. He notably fails to controvert that portion of the affidavit which relates that Weingartner told the affiant in Giresi's presence that Bopp had earlier purchased Giresi's ammunition from Weingartner. Neither does the defendant offer any proof nor any explanation of the unavailability of such proof that Agent Luksic deliberately lied or made an allegation in reckless disregard of the truth as then known to him when he related his observation of certain stereo speakers in Giresi's apartment similar to the suspected stolen speakers the affiant earlier bought from Weingartner. Giresi himself bolsters our conclusion that he has failed to meet the first-prong of *Franks* by his admission that he is the co-owner of the Truck Haven Bar. Weingartner's affidavit, we might add, offers no cure for these deficiencies.

---

21. Because the category two items might be found anywhere in the place to be searched, the arguably insufficient category three descriptions did not authorize any greater intrusion upon defendant's protected privacy interests than did the lawful category two items. We therefore fail to perceive how the inclusion of the category three items is a constitutional violation of such magnitude that we should suppress the items seized pursuant to the constitutionally sufficient warrant listing.

Nor do any of the other affidavits bolster defendant's argument. The Marra Affidavit offers nothing in the way of establishing the necessity for a *Franks* hearing. Marra does not claim to have overheard the July 7th conversation between Bopp, Weingartner and Giresi, and therefore does not controvert the substance of the conversation as related in the affidavit. And neither Giresi, nor Marra, nor Adair, separately or collectively, deny the substance of that conversation: namely, that Giresi and Weingartner wanted Bopp's assistance in collecting the proceeds of some suspected stolen property. The nature of the stolen property in question is unimportant; it is only the attempt to collect the proceeds of stolen property which is material to the finding of probable cause.

 The conclusion that a *Franks* hearing is unnecessary thus rests upon a finding that defendant has failed to show that, to the warrant affiant's knowledge, his allegations were knowingly false or were asserted in reckless disregard of the truth. *Franks v. Delaware, supra,* 438 U.S. at 170, 98 S.Ct. at 2684. "Truth," in this particular context means "a truthful factual showing of probable cause." *United States v. Young Buffalo, supra,* 591 F.2d at 511. Nothing offered by the defendant in any way substantiates his bald and conclusory allegation that these warrant affiants did not in good faith relate the truth as *then* known to them.

We accordingly find that defendant has failed to satisfy the first-prong of the *Franks* test,[22] and his application shall be denied.

### Conclusion

For all of the foregoing reasons, the Court concludes that: defendant's motion to dismiss this indictment should be denied; defendant's suppression motion should be denied insofar as it seeks suppression of the two firearms silencers which are sole basis of these criminal charges;[23] and defendant's application in the alternative for a *Franks v. Delaware, supra,* hearing on the veracity of the warrant affiants should also be denied.

The Court desires that the Government submit to Chambers a proposed Order effectuating all aspects of this Opinion[24] within ten days of this date.

Trial of this matter is hereby peremptorily scheduled to commence on May 7, 1980, at 10:00 a. m. Any motion *in limine* shall be made returnable on that date and shall be filed with Chambers no later than two days before the scheduled commencement of trial. The Court also desires that counsel submit all requested jury instructions at the onset of trial. *See* Rule 30, F.R.Crim.P.

---

**22.** As in *United States v. Weingartner, supra,* at n.18, we here conclude, as an alternative ground, that Giresi has failed to satisfy the second-prong of *Franks.* Putting to one side all of the affidavit's allegations which defendant avers are false or asserted in reckless disregard of the truth, we find that the facts remaining suffice to uphold the finding of probable cause.

**23.** *See* note 2 *supra.*

**24.** Said Order shall also include a provision to the following effect:

The period of time in excess of thirty days during which the instant motion was under advisement *until* the filing of said Order shall be deemed excludable time (as provided in 18 U.S.C. § 3161(h)(8)(B)(ii)) for the purposes of the Speedy Trial Act of 1974, as amended, inasmuch as this motion involved difficult and novel questions of law.